2004 UT 36

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**ONE LOT OF PERSONAL PROPERTY, Defendant.**

**Theodore McKinley and Christine McKinley, Real Parties in Interest and Appellants.**

No. 20020290.

Supreme Court of Utah.

April 30, 2004.

David E. Yocom, Christopher G. Bown, Chad L. Platt, Salt Lake City, for plaintiff.

Frank D. Mylar, Salt Lake City, for appellants.

PARRISH, Justice:

¶ 1 Theodore and Christine McKinley appeal from the district court's denial of their motion for attorney fees. The McKinleys defended their interest in a piece of real property against a forfeiture claim brought by the State of Utah pursuant to section 58–37–13 of the Utah Controlled Substances Act. After the State dismissed its forfeiture claim against the McKinleys' property, the McKinleys sought an award of attorney fees under Utah Code section 24–1–11, which was enacted after the events giving rise to the forfeiture action but prior to the filing of the forfeiture complaint. Alternatively, the McKinleys sought attorney fees under Utah Code section 78–27–56. We hold that the district court erred in denying the McKinleys' request for attorney fees under section 24–1–11 and therefore reverse the district court's ruling.

## BACKGROUND

¶ 2 Sometime prior to February 2001, Theodore McKinley agreed to sell to Herman Drain real property located at 1357 West Crystal Avenue in West Valley City. Drain and his associate, Louis Acevedo, were suspected by the West Valley Police Department of producing and distributing methamphetamine. In connection with the police department's investigation of the suspected illegal drug trafficking, officers obtained warrants to search five properties, including the Crystal Avenue property. The searches took place on February 9, 2001, and resulted in the seizure of automobiles, cash, and other items of personal property.

¶ 3 Near the time of the searches, two detectives contacted Mr. McKinley to discuss the Crystal Avenue property. Mr. McKinley showed the detectives a bill of sale for the property and explained that Drain had paid him $30,000 in cash for the property, but still owed another $10,000. In view of this information, the detectives believed the Crystal Avenue property likely constituted proceeds of illegal drug trafficking, rendering it subject to forfeiture under section 58–37–13 of the Utah Controlled Substances Act. Utah Code Ann. § 58–37–13 (2002).

¶ 4 The State filed a forfeiture complaint with the district court on March 30, 2001. The complaint listed the Crystal Avenue property among the numerous assets allegedly forfeited. When the McKinleys learned of the forfeiture action, they hired an attorney and asserted their interest in the property. On April 30, 2001, the State filed a motion to dismiss the property from the action. Pursuant to the State's motion, the district court issued an order of dismissal on May 8, 2001.

¶ 5 Following resolution of the forfeiture action, the McKinleys moved for attorney fees. The McKinleys claimed they were entitled to an award of attorney fees under section 24–1–11 of the Utah Uniform Forfeiture Procedures Act, which took effect on March 29, 2001—the day before the State filed its forfeiture action.[1] Alternatively, the McKinleys argued that the State had acted in bad faith by including their property in the forfeiture action, thus entitling them to an award of attorney fees pursuant to section 78–27–56 of the Utah Code. Utah Code Ann. § 78–27–56 (2002).

¶ 6 The district court denied the McKinleys' motion for attorney fees on both grounds. It ruled that section 24–1–11 of the Utah Code did not apply because it was not in effect on the "date of seizure or violation" in this case, which, according to the court, was February 9, 2001. The court further found that section 24–1–11 constituted a substantive change in the law that could not be applied retroactively. The district court denied the McKinleys' claim for fees under

---

1. Although the notes to Utah Code section 24–1–11 specify March 20, 2001 as its effective date, the statute actually took effect on March 29, 2001, due to a temporary restraining order issued by federal district Judge Dee Benson that delayed its implementation. Utah Code Ann. § 24–1–11 (2002); *Kennard v. State*, No. 01-CV-00171-B (D.Utah Mar. 20, 2001); *see also Kennard v. Leavitt*, 246 F.Supp.2d 1177, 1181 (D.Utah 2002).

Utah Code section 78–27–56 based on its finding that the State had not acted in bad faith.

¶ 7 The McKinleys now appeal the district court's denial of their motion for attorney fees. They argue that the district court erred in not applying section 24–1–11 of the Utah Code. Alternatively, they argue that the district court erred in not awarding attorney fees under Utah Code section 78–27–56. This court has jurisdiction over their appeal pursuant to Utah Code section 78–2–2(3)(j). Utah Code Ann. § 78–2–2(3)(j)(2002).

### ANALYSIS

¶ 8 We first address the McKinleys' claim for attorney fees under section 24–1–11 of the Utah Code, which took effect just one day prior to the filing of the State's forfeiture complaint. Whether the court erred in failing to apply section 24–1–11 presents a question of law that we review for correctness, giving no deference to the district court. *See State v. Gutierrez,* 972 P.2d 913, 914–15 (Utah 1998) ("The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion."); *accord State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 9 Section 24–1–11 provides:

In any civil or criminal proceeding to forfeit seized property under this chapter, the court shall award a prevailing owner reasonable attorneys' fees and other costs of suit reasonably incurred by the owner. An owner who prevails only in part shall be entitled to recover reasonable attorneys' fees and reasonable costs of suit related to those issues on which he prevailed.

Utah Code Ann. § 24–1–11 (2003).

¶ 10 The district court ruled that section 24–1–11 did not apply in this case because it was not in effect on the "date of seizure or date of violation," which the court identified as February 9, 2001. The district court further ruled that the statute could not be applied retroactively because it constituted a substantive change to the prior law. *See Olsen v. McIntyre,* 956 P.2d 257, 261 (Utah 1998) ("A long-standing rule of statutory construction is that we do not apply retroactively legislative enactments that alter substantive law or affect vested rights unless the legislature has clearly expressed that intention.").

¶ 11 The McKinleys have not appealed the district court's ruling regarding retroactive application of the statute. Instead, they argue that the district court erred in looking to the "date of seizure or date of violation" in determining whether to apply the statute to this case. They argue that the statute should apply to this case because it was in effect both when the State filed its forfeiture complaint and when they incurred the attorney fees at issue.

¶ 12 The State argues that the district court was correct in its ruling because this case should be controlled by the statutes in effect at the time the forfeiture claim arose. According to the State, the forfeiture claim arose on February 9, 2001—the date on which the search warrants were executed—when the State had sufficient information to pursue the action to a successful conclusion. *See Valley Colour, Inc. v. Beuchert Builders, Inc.,* 944 P.2d 361, 364 (Utah 1997) ("The true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." (citation and quotation omitted)).

¶ 13 The State relies on cases in which we have identified controlling law by looking to the date on which a cause of action first accrued. In *State v. Lusk,* this court explained that in deciding whether to apply an amended statute of limitations, we look to the date the cause of action accrued and consider whether the original statute of limitations had run prior to enactment of the amended statute. 2001 UT 102, ¶¶ 25–31, 37 P.3d 1103. In *Stephens v. Henderson,* we declined to apply the Liability Reform Act to a tort claim because the Act was not in effect when the injured plaintiff's cause of action arose (i.e., the date of the accident), and because the statute could not be applied retroactively. 741 P.2d 952, 953–55 (Utah 1987); *see also Olsen,* 956 P.2d at 261 ("[I]n workers' compensation cases, we generally

apply the law in effect at the time of the employee's injury.").

■ ¶ 14 We find that the McKinleys' claim for attorney fees differs in nature from the cases involving application of statutes of limitation or substantive tort law on which the State relies. The McKinleys' claim for attorney fees in this case is analogous to claims for attorney fees under the federal Prison Litigation Reform Act of 1995 (the "PLRA"), which altered the availability of attorney fees in prisoner civil rights suits. 42 U.S.C. § 1997e(d)(3) (1996). In determining whether to apply the PLRA, courts have looked not to the date of the alleged deprivation of civil rights, but to the date on which the attorney fees were incurred.

¶ 15 When Congress passed the PLRA, it included no directives as to whether or how the PLRA's attorney fees provisions should be applied to pending cases. *Martin v. Hadix*, 527 U.S. 343, 353, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). Federal courts of appeal generally agreed that the PLRA provisions could not be applied retroactively, but disagreed over the event within the litigation process that marked the point following which the PLRA could apply. *See Winters v. Sissel*, 167 F.3d 413, 413–14 (8th Cir.1999) (reviewing contrasting approaches to the issue among the circuits). For example, the Fourth Circuit held that the PLRA could be applied as long as the attorney fees were awarded after the date of the PLRA's enactment, *see id.*, 167 F.3d at 414 (citing *Alexander S. v. Boyd*, 113 F.3d 1373, 1386 (4th Cir.1997)), while the Sixth Circuit held that the PLRA could be applied as long as the action had been commenced subsequent to the PLRA's enactment, *see id.* (citing *Hadix v. Johnson*, 143 F.3d 246, 255–56 (6th Cir. 1998)).

¶ 16 The United States Supreme Court resolved the split of authority among the circuits in *Martin*. In that case, the Supreme Court identified the date on which an attorney performed work as the reference point for determining whether to apply the fee provisions of the PLRA. *Martin*, 527 U.S. at 347, 119 S.Ct. 1998. It held that the provisions applied to all work performed by an attorney following the PLRA's enactment, but did not apply to work performed prior to its enactment because such application would produce impermissible retroactive effects.[2] The Supreme Court reasoned that "[o]n April 26, 1996, through the PLRA, the plaintiffs' attorneys were on notice that their hourly rate had been adjusted. From that point forward, they would be paid at a rate consistent with the dictates of the law." *Id.* at 361, 119 S.Ct. 1998. "In other words," explained the Court, "as applied to work performed after the effective date of the PLRA, the PLRA has future effect on future work; this does not raise retroactivity concerns." *Id.* at 362, 119 S.Ct. 1998.

¶ 17 Similarly, in this case, we are asked to apply an attorney fee statute that contains no express legislative directive as to its temporal reach. Consistent with the Supreme Court's reasoning in *Martin*, we find it appropriate to apply the statute to attorney fees incurred subsequent to March 29, 2001, the statute's effective date. As of that date, the State was on notice that it could be liable for attorney fees incurred by a party who successfully defended a forfeiture action. In this case, not only were the McKinleys' fees incurred after the statute's effective date, but the State did not even commence the forfeiture action until after the effective date. *See also Utah Safe to Learn–Safe to Worship Coalition, Inc. v. State*, 2004 UT 32, ¶ 15, 94 P.3d 217 (finding prospective rather than retroactive application of statutory initiative requirements).

---

2. The Supreme Court's reasoning paralleled that of the Eighth and D.C. Circuits. *See Williams v. Brimeyer*, 122 F.3d 1093, 1094 (8th Cir.1997) ("We hold that the [PLRA] applies to all hours worked in this case after the date of the passage of the Act. This is not a 'retroactive' application of the new law."); *Inmates of D.C. Jail v. Jackson*, 158 F.3d 1357, 1360 (D.C.Cir.1998) ("When it is applied to work performed after the effective date of the Act, the PLRA [raises no retroactivity concerns] because the statute creates present and future effects on present and future conduct, and has no effect on past conduct. The fees at issue were earned after the PLRA passed. The PLRA does not in this case upset vested interests because no right to a fee existed until the work was done." (citations omitted)).

¶ 18 The State argues that even if section 24–1–11 applies to this case, the McKinleys are not entitled to recover their attorney fees because they were not prevailing parties in the forfeiture action. In so arguing, the State relies on *Ault v. Holden*, in which we stated that "to be a prevailing party, a party 'must obtain at least some relief on the merits' of the party's claim or claims." 2002 UT 33, ¶ 48, 44 P.3d 781 (quoting *Crank v. State Judicial Council*, 2001 UT 8, ¶ 38, 20 P.3d 307 (citing *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("To qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim."))). The State contends that the McKinleys did not obtain any relief on the merits because the State voluntarily dismissed the forfeiture claim before it was addressed by the district court. We disagree.

¶ 19 The fact that the State recognized the apparent weakness of its claim and voluntarily dismissed it before the district court had an opportunity to do likewise does not relieve the State of its obligation to reimburse the McKinleys for their attorney fees. Any other rule would be fundamentally unfair to those defendants who are required to incur substantial fees defending a plaintiff's non-meritorious claims up to the point of the plaintiff's voluntary dismissal.

¶ 20 Our conclusion in this regard is consistent with cases from the Tenth Circuit that have decided the issue in the context of rule 54(d) of the Federal Rules of Civil Procedure. See *Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir.1997); *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 456 (10th Cir.1995). Rule 54(d) provides that a prevailing party is typically entitled to recover costs. It also specifies the procedure litigants should follow when seeking awards of attorney fees. Fed.R.Civ.P. 54(d).

¶ 21 In *Cantrell*, the Tenth Circuit considered whether a defendant is a prevailing party under rule 54 when a plaintiff voluntarily dismisses its case prior to trial. 69 F.3d at 456. The court held that "a defendant is a prevailing party under Rule 54 when, in circumstances not involving settlement, the plaintiff dismisses its case against the defendant, whether the dismissal is with or without prejudice." *Id.* The Tenth Circuit reaffirmed this holding in *Aerotech* when it stated that the "mere fact that [the plaintiff] dismissed [the defendant] early in the litigation is insufficient to warrant a denial of costs. Nothing in Rule 54(d) or our case law suggests that we should penalize a party for prevailing early." 110 F.3d at 1527.

¶ 22 We hold that the McKinleys are prevailing parties and that they therefore are entitled to an award of attorney fees for work performed subsequent to the enactment of section 24–1–11. We remand to the district court for a determination of the appropriate amount.

¶ 23 Having determined that the district court erred in failing to apply section 24–1–11 to this case, we need not reach the McKinleys' argument that the district court erred in failing to award fees under section 78–27–56. Nor do we need to address the McKinleys' additional claim that no valid seizure of the real property occurred and that the district court therefore could not rely on the date of seizure to determine controlling law.

### CONCLUSION

¶ 24 We hold that the district court erred in failing to apply Utah Code section 24–1–11, which provides that a prevailing owner in a forfeiture proceeding may recover attorney fees. Although the statute was not in effect when officers executed a search warrant on the McKinleys' property, the statute was in effect both when the State filed its forfeiture action and when the McKinleys incurred attorney fees to defend their ownership interest. We also hold that the State's voluntary dismissal of the McKinleys' property from the forfeiture action does not prevent the McKinleys from qualifying as prevailing parties. Accordingly, we hold that the McKinleys are entitled to an award of attorney fees for work performed subsequent to March 29, 2001, the effective date of section 24–1–11 of the Utah Code. We reverse the decision of the district court and remand for further proceedings consistent with this opinion.

¶ 25 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.