IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Lane Myers Construction, LLC, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20101047-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| <u>Countrywide Home Loans, Inc.</u>; | ) | (September 27, 2012) |
| <u>National City Bank of Indiana</u>; Dick | ) | |
| Kyker; Kim Kyker; All Stone Masonry, | ) | 2012 UT App 269 |
| LLC; Sunset Drywall, Inc.; Vander Veur | ) | |
| Insulations, Inc.; Mountainview | ) | |
| Builders Supply, Inc.; National City | ) | |
| Bank; and Does 1–10, | ) | |
| | ) | |
| Defendants and <u>Appellees</u>. | ) | |

-----

Third District, Silver Summit Department, 070500707
The Honorable Keith A. Kelly
The Honorable Bruce C. Lubeck[1]

Attorneys:     Rick L. Sorensen, Salt Lake City, for Appellant
               Leslie Van Frank and Bradley M. Strassberg, Salt Lake City, for
               Appellee Countrywide Home Loans, Inc.
               Lincoln Harris, Zachary E. Peterson, and Paul P. Burghardt, Salt Lake
               City, for Appellee National City Bank of Indiana

---

1. Judge Bruce C. Lubeck entered the orders awarding attorney fees to Countrywide
Home Loans, Inc. and granting summary judgment to National City Bank of Indiana.
Judge Keith A. Kelly entered the final judgments, which dismissed Lane Myers
Construction, LLC's claims against these defendants and set the amount of attorney fees
each received.

-----

Before Judges McHugh, Voros, and Roth.

ROTH, Judge:

¶1      Lane Myers Construction, LLC (Lane Myers) challenges the award of attorney fees to Countrywide Home Loans, Inc. (Countrywide) pursuant to section 38-1-18 of the Utah Mechanics' Lien Act on the basis that Countrywide was not the successful party. *See generally* Utah Code Ann. § 38-1-18(1) (2010) (current version at *id.* § 38-1a-707(1) (Supp. 2012)) ("[I]n any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee . . . .").[2] Lane Myers also contends that the trial court erred in granting summary judgment for National City Bank of Indiana (National City) when it decided that Lane Myers's certification that there were no liens or claims that might result in a lien was equivalent to a written waiver and release of lien rights form required by the mechanics' lien act. *See generally id.* § 38-1-39(2), (4) (current version at *id.* § 38-1a-802(2), (4) (Supp. 2012)) (describing a form that includes the components of an enforceable waiver of lien rights). National City cross-appeals, asserting that the trial court erred when it reduced its request for attorney fees under section 38-1-18. We affirm the award of attorney fees to Countrywide but reverse the grant of summary judgment in favor of National City. The reversal of summary judgment makes National City's attorney fees claim moot.


BACKGROUND

¶2      In February and May 2006, Lane Myers entered into two separate construction agreements with Dick and Kim Kyker (the home buyers) to build a residence in Oakley,

---

2. During the 2012 legislative session, the Utah Legislature renumbered the mechanics' lien act and made stylistic changes to the sections relevant to this appeal. *See generally* Liens for Preconstruction Service and Construction Work Act, ch. 278, §§ 6–53, 2012 Utah Laws ___, ___ (codified at Utah Code Ann. §§ 38-1a-101 to -804 (Supp. 2012)). For ease of reference to our precedent, we cite to the relevant code sections with the previous numbering. Our citations therefore are to the 2010 version of the code, the most current version available for the statutory sections as numbered here. The 2010 version is substantively identical to the version in effect at the time of the relevant events underlying this litigation.

Utah, (the Oakley home) and another in Park City, Utah (the Mountain home). The home buyers obtained construction financing from Countrywide for the Oakley home and from National City for the Mountain home. Those loans did not cover the complete costs of constructing either of the homes. When the home buyers failed to pay Lane Myers the amounts due on the construction contracts, Lane Myers recorded a mechanics' lien and a lis pendens against each home. Lane Myers joined Countrywide, National City, and the home buyers as defendants in a lawsuit seeking to foreclose its mechanics' liens and to have those liens declared prior in right to the trust deeds recorded on the Oakley home by Countrywide and the Mountain home by National City to secure the construction financing. At that point, the facts relevant to each defendant's case diverge.

## I. The Oakley Home (Countrywide)

¶3    The home buyers eventually paid Lane Myers in full for its construction work on the Oakley home, including attorney fees incurred by Lane Myers up to that point. On July 23, 2008, Lane Myers recorded a release of lien and a release of lis pendens for that property. Lane Myers did not dismiss Countrywide from the foreclosure case, however, and nearly a year later, Lane Myers filed an amended complaint, asserting the same mechanics' lien foreclosure claim that it had asserted in its original complaint against Countrywide on January 23, 2008.[3] Countrywide moved for summary judgment on the basis that Lane Myers had been paid in full and had released the lien. In the motion, it contended that it was not only entitled to a judgment of dismissal as a matter of law but also to its reasonable attorney fees pursuant to section 38-1-18 of the mechanics' lien act. Section 38-1-39 provides, "[I]n any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee . . . ." *Id.* § 38-1-18(1). Lane Myers conceded that dismissal of the claim against Countrywide was appropriate but asserted that Countrywide was not entitled to attorney fees because it had not succeeded on the merits. The trial court agreed with Countrywide, granting the motion for summary judgment and awarding it $27,729.50 in attorney fees incurred after July 23, 2008.

---

3. The amended complaint added an additional defendant, but Lane Myers's claims, including the one against Countrywide, were identical to those raised in the January 2008 complaint.

## II. The Mountain Home (National City)

¶4     National City also filed a motion for summary judgment on Lane Myers's mechanics' lien foreclosure claim for money owing on the Mountain home.[4]  According to National City, the Request for Disbursement forms Lane Myers submitted in order to draw funds from the construction loan (the draw requests) had effectively waived any mechanics' lien rights for construction work completed prior to the date of each request. Each draw request contained identical language:

> The Borrower(s) and General Contractor state that . . .
> available proceeds of the loan are sufficient to finally and
> fully complete and pay for completion of improvements,
> and that no suppliers, subcontractors, laborers, or other
> persons are claiming or are entitled to claim a lien against
> the property securing the loan.

During the course of construction between September 2006 and August 2007, Lane Myers and the home buyers executed at least eleven progress payment draw requests containing this language.

¶5     On August 22, 2007, Lane Myers made a final draw request on a printed form identical to those submitted for the progress payments.  At the top of the draw request, Lane Myers wrote, "Final Draw."  In addition to the language quoted above, the form stated,

> IF THIS IS THE FINAL DRAW I/WE FURTHER CERTIFY
> THAT:
>
> 1.  *The General Contractor has to date been paid in full* for all
> work performed and for all labor, materials furnished by the
> General Contractor and all sub-contractors, materialmen,
> suppliers and laborers and that *no such sub-contractors,*

---

4. National City actually joined the home buyers' motion for partial summary judgment, which was aimed at getting the mechanics' lien foreclosure claim dismissed. Because the home buyers are not parties on appeal, we refer to the motion as National City's for simplicity.  And because the only claim asserted against National City was the mechanics' lien foreclosure, we do not refer to the motion as one for partial summary judgment as it was styled in the trial court.

*suppliers, materialmen, laborers or other persons providing goods and services used in the improvements to the property have unpaid claims* except as specifically set forth as follows:

_____
_____
_____
_____

(Emphasis added.)  No exceptions were noted in the space provided.  The form then continued,

2.  That *no liens or claims that may result in liens exist against the above-described property other than set forth herein.*
3.  That the General Contractor has received payments for all stages of construction/rehabilitation of the property other than the final disbursement.
4.  That the borrower(s) have requested, from the Lender, final disbursement of the construction/rehab funds in order to make final payment to the General Contractor and that *upon said disbursement by Lender the General Contractor will be paid in full under the Construction Contract.*

(Emphasis added.)  No "liens or claims that may result in liens" were listed as exceptions on the final draw request, and the form was executed by both the home buyers and Lane Myers.

¶6      National City asserted that the language of the draw requests created "a lien release for the Mountain . . . [h]ome" pursuant to section 38-1-39 of the mechanics' lien act that "barred" any "claim for foreclosure of its lien."  Section 38-1-39 provides that a claimant's written consent "that waives or limits the lien claimant's lien rights is enforceable only if the lien claimant executes a waiver and release that is signed by the lien claimant" and "receives payment of the amount identified in the waiver and release."  Utah Code Ann. § 38-1-39(2) (2010) (current version at *id.* § 38-1a-802(2) (Supp. 2012)).[5]  The trial court agreed, concluding that the draw requests "compl[ied]

_____

5.  Section 38-1-39 took effect on May 1, 2007.  *See* Utah Code Ann. § 38-1-39 effective dates (2010) (current version at *id.* § 38-1a-802(2) (Supp. 2012)).  Lane Myers began construction in 2006, and accordingly, some of the draw requests containing the

(continued...)

substantially with Utah law" to "effectively and clearly, on their face, release any claims for work done prior to the date of execution." As a result, it granted National City's motion for summary judgment and dismissed Lane Myers's mechanics' lien claim with prejudice. The trial court also awarded National City $38,314 in attorney fees as the successful party under the attorney fees provision of the mechanics' lien act. *See id.* § 38-1-18(1) (2010) (current version at *id.* § 38-1a-707(1) (Supp. 2012)).


ISSUES AND STANDARDS OF REVIEW

¶7 Lane Myers challenges the award of attorney fees to Countrywide on the basis that Countrywide was not a successful party within the contemplation of the mechanics' lien act. "Attorney fee determinations that involve statutory interpretation present questions of law." *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 10, 179 P.3d 808.

¶8 Lane Myers also challenges the grant of summary judgment to National City on the basis that the trial court improperly determined that the draw request language representing that there were "no liens or claims that may result in liens" was legally equivalent to the waiver and release of lien required by the mechanics' lien act. The propriety of a grant of summary judgment is a question of law, and the appellate court therefore does not grant any deference to the trial court's legal conclusions. *See Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 235 (Utah 1993).


ANALYSIS

I. Countrywide Is Entitled to Attorney Fees Under the Mechanics' Lien Act.

¶9 Lane Myers challenges the award of attorney fees to Countrywide under section 38-1-18 of the mechanics' lien act. Section 38-1-18 provides that "in any action brought

---

5. (...continued)
language purported to be a waiver and release were submitted prior to the effective date of section 38-1-39. Lane Myers stipulated at oral argument, however, that section 38-1-39 was in effect at the time the draw requests were made. Because the final draw request, which contains the same language as the progress payment draw requests, was clearly made after the effective date of section 38-1-39, Lane Myers's stipulation seems unexceptionable.

to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee." Utah Code Ann. § 38-1-18(1). "[A] successful party [under Utah Code section 38-1-18] includes one who successfully enforces or defends against a lien action." *Uhrhahn*, 2008 UT App 41, ¶ 32 (alterations in original) (internal quotation marks omitted). The term "[s]uccessful party" is often equated with the term "prevailing party" from other attorney fees contexts, which means "a party . . . [who] obtain[s] at least some relief on the merits of the party's claim or claims." *Id.* (internal quotation marks omitted). Lane Myers asserts that Countrywide cannot be "the successful party" under the mechanics' lien act because Lane Myers "received 100% of what it was entitled to, including interest, attorneys' fees, costs, and lien filing fees," in filing the mechanics' lien foreclosure claim, while Countrywide "has not prevailed on a single claim and did not successfully defeat any portion of [Lane Myers]'s claims."

¶10    Lane Myers is correct that it prevailed on the mechanics' lien claim initially. After it received payment for its claim and attorney fees incurred to that point and recorded a release of lien and a release of lis pendens on July 23, 2008, however, it no longer had a claim against Countrywide under the mechanics' lien act. Yet, on July 7, 2009, Lane Myers filed the amended complaint, in which it continued to assert against Countrywide the same claim for mechanics' lien foreclosure that it had originally brought, thereby requiring Countrywide to again respond to the claim and incur further attorney fees to end the litigation, including the filing of a motion for summary judgment. Even though Lane Myers eventually conceded that dismissal was appropriate—a concession that obviated the need for the trial court to actually reach the merits of the claim—Countrywide was nevertheless successful in getting Lane Myers's claim dismissed. We therefore conclude that under the mechanics' lien attorney fees provision, Countrywide is entitled to an award of attorney fees incurred in responding to the amended complaint.

¶11    Our decision in *Uhrhahn Construction & Design, Inc. v. Hopkins*, 2008 UT App 41, 179 P.3d 808, supports this conclusion. There, we were asked to resolve whether the homeowners were the successful party for purposes of collecting attorney fees under the mechanics' lien act after we reversed the trial court's determination that the contractor's lien was enforceable. *See id.* ¶¶ 28, 30, 34. The homeowners had asserted in the trial court that the mechanics' lien action had not been timely filed, a position that the trial court rejected without making pertinent findings of fact. *See id.* ¶ 26. On appeal, the homeowners reasserted that the action was untimely, and the contractor responded by simply requesting a remand for entry of the omitted findings rather than countering the homeowners' position on the merits. *See id.* ¶¶ 26–30. Because the contractor failed to address the merits, we reversed the trial court's decision. *See id.* ¶ 30. We noted that

> [the] case present[ed] a somewhat unusual circumstance
> because the homeowners prevailed on appeal, not so much
> because they succeeded in proving the lien action was
> untimely, but because the trial court erred by failing to enter
> material factual findings and because [the contractor]'s
> appellate strategy worked to the homeowners' advantage,
> leaving the homeowners' characterization of the record
> unrefuted.

*Id.* ¶ 34. Nevertheless, we determined that the homeowners were entitled to attorney fees as the successful parties pursuant to the mechanics' lien act. *See id.* ¶¶ 34–35. In reaching this decision, we relied on the Utah Supreme Court's analysis in *State v. One Lot of Personal Property*, 2004 UT 36, 90 P.3d 639, in which the court declared the defendant the successful party entitled to attorney fees after the plaintiff voluntarily dismissed its forfeiture claim, *see id.* ¶¶ 18–19. *See Uhrhahn*, 2008 UT App 41, ¶ 35. The supreme court in *One Lot* reasoned,

> The fact that the [plaintiff] recognized the apparent
> weakness of its claim and voluntarily dismissed it before the
> district court had an opportunity to do [so] likewise does not
> relieve the [plaintiff] of its obligation to reimburse the
> [defendants] for their attorney fees. Any other rule would
> be fundamentally unfair to those defendants who are
> required to incur substantial fees defending a plaintiff's non-
> meritorious claims up to the point of the plaintiff's voluntary
> dismissal.

2004 UT 36, ¶ 19. Extending the logic of *One Lot* to the situation in *Uhrhahn*, we concluded that "even though the homeowners' success on the mechanic's lien issue was a result of the errors or inaction of others, they were the successful party for purposes of Utah Code section 38-1-18." *Uhrhahn*, 2008 UT App 41, ¶ 35.

¶12 Here, Lane Myers's agreement to dismiss the action in response to a summary judgment motion after the lien and lis pendens were released is analogous to a voluntary dismissal, in that having received full payment on its claim and having released the lien, it no longer had a legal justification for maintaining an action against Countrywide to foreclose upon a then-nonexistent mechanics' lien. *See generally One Lot*, 2004 UT 36, ¶ 19 (holding that voluntary dismissal due to recognition of the "apparent weakness of its claim" does not relieve the plaintiff of its obligation to pay statutory attorney fees). Unlike the voluntary dismissal in *One Lot* where the plaintiff

dismissed the claim without recovering anything, *see id.* ¶¶ 4, 19, Lane Myers did in fact recover on its mechanics' lien claim; nevertheless, we note that Lane Myers could have avoided statutory attorney fees by simply dropping the claim against Countrywide from its amended complaint. Because Countrywide was required to incur additional attorney fees in successfully defending against a renewed—and at that point meritless—claim of mechanics' lien foreclosure as "a result of the errors or inaction of others," it is entitled to attorney fees pursuant to section 38-1-18 of the mechanics' lien act. *See Uhrhahn*, 2008 UT App 41, ¶ 35. We therefore affirm the trial court's award of attorney fees to Countrywide.

## II. National City Was Not Entitled to Summary Judgment Because the Draw Requests Are Not Lien Waivers and Releases Under the Mechanics' Lien Act.

¶13    Lane Myers next challenges the grant of summary judgment in favor of National City, asserting that the trial court improperly determined that the draw requests complied with the mechanics' lien act's requirements for an enforceable waiver and release of liens. *See generally* Utah Code Ann. § 38-1-39(2) (2010) (current version at *id.* § 38-1a-802(2) (Supp. 2012)). As a basis for its ruling, the trial court concluded that the draw requests "contain the property, names and addresses, and amounts owing" and they "effectively and clearly, on their face, release any claims for work done prior to the date of execution." Consequently, it determined that the draw requests "contain sufficient information such that they comply substantially with Utah law." National City urges this court to adopt that reasoning, contending that to be effective, the mechanics' lien act requires a lien release only to be "in substantially the form provided" in the act, *id.* § 38-1-39(4)(a), and that, accordingly, a document that includes the property and claim information along with a statement that no liens or rights to claim a lien exist fulfills this requirement. Lane Myers, on the other hand, contends that the act requires an enforceable lien waiver to more closely follow the form set out in section 38-1-39, at least to the extent that it must contain not only the identifying information required but also all of the form's substantive components, including, for example, waiver and release language specifically acknowledging the relinquishment of all the protections of the mechanics' lien act.

¶14    Appellate courts review a trial court's interpretation of a statute for correctness, affording no deference to the trial court. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863. "Our overall goal [in interpreting statutes] is to give effect to the legislative intent, as evidenced by the [statute's] plain language, in light of the purpose the statute was meant to achieve." *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 15, 266 P.3d 702 (second alteration in original) (internal quotation marks omitted). Thus, we begin our analysis by looking to the plain language, attributing to the language its

ordinary meaning. *See id.* "As part of this well-worn canon[] of statutory construction, we must read the plain language of the statute as a whole," "constru[ing] provisions in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Archuleta v. St. Mark's Hosp.*, 2009 UT 36, ¶ 8, 238 P.3d 1044 (alteration in original) (internal quotation marks omitted); *see also Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465 ("[W]e do not interpret the 'plain meaning' of a statutory term in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)."). Further, the statute's purpose is a relevant consideration in assessing the plain meaning of its language. *See Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147.

¶15    Our prior case law has established some useful guidelines for interpretating the Utah Mechanics' Lien Act. "The purpose and intent of Utah's Mechanics' Lien Act manifestly has been to protect, at all hazards, those who perform the labor and furnish the materials which enter into the construction of a building or other improvement" (collectively, contractors).[6] *Sill v. Hart*, 2007 UT 45, ¶ 8, 162 P.3d 1099 (citation and internal quotation marks omitted). "We [therefore] construe the lien statutes broadly to effectuate that purpose." *Interiors Contracting, Inc. v. Navalco*, 648 P.2d 1382, 1386 (Utah 1982). A lien, however, creates an encumbrance on property that affects the owner's right to freely use or transfer it. *See id.* Thus, we interpret the mechanics' lien act strictly when deciding whether a right to a lien exists, ensuring compliance with the statutory provisions that authorize a mechanics' lien and its waiver. *See Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990) (noting that mechanics' liens are products of statute and that "lien claimants may only acquire a lien by complying with the statutory provisions authorizing them"); *Lindemann v. Belden Consol. Min. & Mill. Co.*, 65 P. 403, 404 (Colo. Ct. App. 1901) ("A mechanic's lien statute should be liberally construed as to the remedial portion of it, but it must be strictly construed in determining the question as to whether the right to lien exists.").

¶16    In keeping with the act's protective purpose, the Utah Legislature enacted section 38-1-29 in 2001, which broadly prohibited "the waiver of rights or privileges granted" by the mechanics' lien act. *See* Utah Code Ann. § 38-1-29 & history (2010) (current

---

6. The mechanics' lien act broadly protects all persons who provide services or materials used in construction, including contractors, subcontractors, and materialmen. For ease of reference, we will refer to the protected parties generally as contractors, as a contractor is the principal protected party in this case.

version at *id.* § 38-1a-105 (Supp. 2012)).  In 2007, the legislature responded to concerns that such a comprehensive constraint on waivers would inhibit construction financing by enacting section 38-1-39, "as a safety valve on the broad prohibition contained in section 38-1-29[ against contractors] . . . waiv[ing] or limit[ing] their rights under the Mechanics' Liens Act," *Olsen v. Chase*, 2011 UT App 181, ¶ 15, 270 P.3d 538, *cert. denied*, 262 P.3d 1187 (Utah 2011).  Section 38-1-39, however, continues the act's focus on protecting contractors by identifying specific conditions for a valid waiver of lien rights:

> Notwithstanding Section 38-1-29, *a written consent given by a lien claimant that waives or limits the lien claimant's lien rights is enforceable only if the lien claimant*:
>     (a)(i) *executes a waiver and release* that is signed by the lien claimant or the lien claimant's authorized agent; . . .
>         . . . and
>     (b) receives payment of the amount identified in the waiver and release . . . .

Utah Code Ann. § 38-1-39(2)(a)(i), (b) (emphasis added);[7] *Olsen*, 2011 UT App 181, ¶ 15 ("[S]ection 38-1-39 sets out conditions under which the holder of a mechanic's lien may now, notwithstanding section 38-1-29, agree to subordinate or waive the priority of that lien.").  In so doing, the legislature did not leave unaddressed the standard that an enforceable waiver and release must meet:  "A waiver and release given by a lien claimant meets the requirements of this section if it is in substantially the form provided in this Subsection (4)."  Utah Code Ann. § 38-1-39(4)(a).  Subsection (4) then provides two very similar sample forms (tailored to whether the release relates to a progress payment or a final payment), each introduced by language stating that "[a] waiver and release may be in substantially the following form if the lien claimant is required to execute a waiver and release in exchange for or to induce . . . payment."  *Id.* § 38-1-39(4)(b)–(c).  The legislature's choice of the permissive "may" to introduce the forms reinforces the introductory concept that to meet the requirements of the statute, a waiver and release must be "in substantially the form provided," rather than in the exact language of each form.  *See generally Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 485 P.2d 1035, 1036–37 (1971) ("[T]he word "may" in its most usual meaning does not

---

7.  Section 38-1-39(2) also provides for the release of a lien through a restrictive endorsement on a check.  *See generally* Utah Code Ann. § 38-1-39(2)(a)(ii)–(b) (2010) (current version at *id.* § 38-1a-802(2)(a)(ii)–(b) (Supp. 2012)).  Under the circumstances of this case, the endorsement-related provisions are not relevant.

import certainty, but uncertainty. That is, that whatever is referred to, either may or may not be, or occur." (footnote omitted)). In other words, the precise language of the forms set out in subsection (4) is not required to create a valid waiver and release of lien rights, but rather, use of those forms provides a dependable safe harbor for lenders and others who wish to be assured that a contractor's written waiver and release of statutory lien rights is enforceable under the act.

¶17    Should a lender choose not to use the specified form, however, the overarching standard for an enforceable waiver and release must still be met; that is, it must be "in substantially the form provided in . . . Subsection (4)." Utah Code Ann. § 38-1-39(4)(a). By deciding to include templates with particular language, rather than simply identifying the requisite elements of a waiver and release more generally, and by requiring that a waiver and release be "in substantially the form provided," the legislature has indicated its intent that a valid waiver and release at least contain each of the component parts the form includes, in substance and effect if not in the identical language. *See generally Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384 ("When interpreting statutes, we . . . presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." (citation and internal quotation marks omitted)); Random House, Inc., *Dictionary.com Unabridged,* available at http://dictionary.reference.com/browse/form (last visited September 7, 2012) (defining "form" as "something that gives or determines shape; a mold"). In this regard, there is a distinction between "comply[ing] substantially with Utah law" by including "the property, names and addresses, and amounts owing," as the trial court determined the National City draw requests did here, and being "in substantially the form provided," that is, with all the components identified in section 38-1-39(4) as part of a valid form, *see* Utah Code Ann. § 38-1-39(4)(b)–(c).

¶18    The forms the legislature included in section 38-1-39(4) contain four distinct components. First, the form includes a statement that the document is intended to be a waiver and release in accordance with Utah law. *See* Utah Code Ann. § 38-1-39(4)(b)–(c) (2010) (current version at *id*. § 38-1a-802(4) (Supp. 2012)) (identifying the form documents as Utah waivers and releases). Second, the form sets out specific information pertinent to the particular lien rights subject to waiver and release, including "Property Name," "Property Location," the identity of the "[Contractor]'s Customer," "Invoice/Payment Application Number," and "Payment Amount." *See id*. Third, the form gives explicit notice to the contractor of the effect that signing the release will have on rights otherwise available to it under the mechanics' lien act and the conditions upon which the waiver of those rights becomes effective:

> To the extent provided below, this document becomes
> effective to release and the undersigned is considered to
> waive any notice of lien or right under Utah Code Ann., Title
> 38, Chapter 1, Mechanics' Liens . . . related to payment rights
> the [contractor] has on the above described Property once:
>> (1) the undersigned endorses a check in the above
> referenced Payment Amount payable to the [contractor]; and
>> (2) the check is paid by the depository institution on
> which it is drawn.

*Id.* In other words, each form clearly explains that by executing it and accepting payment, the contractor will "release and . . . waive" all rights available under the Utah Mechanics' Lien Act "related to payment rights the [contractor] has on the above described Property." *Id.* The language that follows that notification clearly defines the "extent" of the waiver and release by explaining that "[t]his waiver and release applies to . . . payment for the work, materials, equipment, or a combination [thereof] furnished by the undersigned [contractor to date]." *Id.* Fourth, the form requires the contractor either to represent that all those who might have subordinate lien claims have been paid or to promise that the funds received in exchange for the waiver and release will be used to make such payments:

> The undersigned [contractor] warrants that [he or she] either
> has already paid or will use the money the [contractor]
> receives from this . . . payment promptly to pay in full all . . .
> laborers, subcontractors, materialmen, and suppliers for all
> work, materials, equipment, or combination [thereof] that
> are the subject of this waiver and release.

*Id.*

¶19    Each of these components is important, not only to effectively waive and release lien rights for the benefit of a lender, but also to ensure that the contractor is clearly on notice that as a consequence of signing the form, he or she is relinquishing core protections of the mechanics' lien act in connection with a particular project on specific property. We therefore conclude that, at a minimum, a valid lien waiver and release form must contain each of the form's four components to be "in substantially the form provided" and therefore comply with the requirements of section 38-1-39. *See id.* We believe that this interpretation comports with the plain language of the mechanics' lien act in light of its overarching purpose of protecting the rights of contractors to be paid

for their work in improving property. *See Sill v. Hart*, 2007 UT 45, ¶ 8, 162 P.3d 1099 (observing that "[t]he purpose and intent of Utah's Mechanics' Lien Act . . . [is] to protect at all hazards, those who perform the labor and furnish the materials which enter into the construction of a building or other improvement"); *see also* Utah Code Ann. § 38-1-29 (creating a broad prohibition against lien waiver, which can only be circumvented by complying with section 38-1-39); *Archuleta v. St. Mark's Hosp.*, 2010 UT 36, ¶ 8, 238 P.3d 1044 (requiring appellate courts to read statutes within the same title and chapter in harmony with one another).

¶20    The draw requests in this case do not contain all the required components of a valid form. Certainly, as the trial court acknowledged, they contain the necessary information regarding the property affected and the payment amount, the statutory form's second component. *See* Utah Code Ann. § 38-1-39(4)(b)–(c). They also include the representation required by the form's fourth component, a statement that Lane Myers has paid its employees, subcontractors, and suppliers, and that consequently none have a lien claim or right to claim a lien against the property. *See id.* The draw requests, however, do not explicitly state that they are intended to be waivers and releases of mechanics' liens and therefore do not include the form's first component. *See id.* (titling the sample forms as waivers and releases pursuant to Utah law). Nor do they warn the contractor, as the statutory form's third component requires, that under specified conditions (i.e., signing the form and accepting payment), the contractor relinquishes all rights and protections under the mechanics' lien act. Put differently, the draw requests do not explain the legal effect of signing a draw request or the conditions governing its effectiveness, subjects on which the legislature focused significant attention in creating the statutory forms. *See id.* (dedicating two full paragraphs in each form to explaining the effect of signing such a waiver and release, with citation to the relevant statutory authority, as well as the scope of the release).

¶21    Lane Myers's certification in the final draw request "[t]hat [it has] no liens or claims that may result in liens against the above-described property other than set forth herein" is insufficient to satisfy these requirements, as that certification merely amounts to a statement that there is no basis for a lien claim. The draw requests themselves do not contain the words "waiver" or "release" that together serve to draw the contractor's attention to the fact that existing rights are being relinquished, *see Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993) ("A waiver is the intentional relinquishment of a known right." (internal quotation marks omitted)), nor does the National City form warn the contractor that it is relinquishing all its rights under Utah's Mechanics' Lien Act. Without all four required components, the draw requests are not "in substantially the form" contemplated by section 38-1-39 and therefore fail to comply

with the requirements set by the mechanics' lien act for a valid and enforceable waiver and release of liens.[8] *See* Utah Code Ann. § 38-1-39(4)(a). Because Lane Myers did not execute a waiver and release that complies with the statute, the trial court erred in granting summary judgment in favor of National City on that basis.[9] *See generally* Utah R. Civ. P. 56(c) (authorizing a grant of summary judgment only where a party is entitled to a judgment as a matter of law). Lane Myers did not file a cross-motion for summary judgment, however, so our decision stops short of granting judgment in its favor. Accordingly, we reverse and remand to the trial court for further proceedings in accordance with our decision.

¶22    Lane Myers requests attorney fees incurred in the trial court and on appeal on the ground that it is the successful party. We decline to award Lane Myers its attorney fees incurred in the trial court because it has not yet prevailed on the merits of the claim. *See generally* Utah Code Ann. § 38-1-18(1) (2010) (current version at *id.* § 38-1a-707(1) (Supp. 2012)) (permitting the successful party to recover its attorney fees incurred in enforcing a lien under the mechanics' lien act); *American Rural Cellular, Inc. v. Systems Commc'n Corp.*, 939 P.2d 185, 193 & n.7 (Utah Ct. App. 1997) (stating that attorney fees ought to be awarded to the party who is ultimately successful on the merits). And because Lane Myers did not receive attorney fees in the trial court, it is not eligible for attorney fees on appeal. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received [statutory] attorney fees below prevails on appeal, the

---

8. Our conclusion that the draw requests at issue here do not contain all the component parts required by section 38-1-39 means that we do not reach the question of how much a lien waiver and release form that has the required components may deviate from the specific language of subsections (4)(b) and (4)(c) and still be "in substantially the form provided," Utah Code Ann. § 38-1-39(4)(a). That is an issue for another day.

9. The trial court described Lane Myers as an experienced and sophisticated contractor who likely understood that the practical effect of the representations it made in the draw requests was to waive any lien rights it might have had. Nevertheless, the legislature has set out specific requirements for the creation of an enforceable waiver and release of lien rights, which the draw requests did not meet. Although this may appear to provide a windfall to sophisticated contractors, the legislation was designed to provide a limited exception to the act's previous complete prohibition on waiver, while still assuring that contractors are protected without regard to their relative level of legal sophistication.

party is also entitled to fees reasonably incurred on appeal." (internal quotation marks omitted)). Furthermore, our reversal of the grant of summary judgment to National City means that it is no longer the successful party and is no longer entitled to the attorney fees award. The issue raised on its cross-appeal challenging the amount of attorney fees awarded by the trial court is therefore moot. Our decision does not preclude the successful party from seeking attorney fees under section 38-1-18 in the trial court on remand, which may include the fees incurred in this appeal.

## CONCLUSION

¶23    We affirm the award of attorney fees to Countrywide pursuant to section 38-1-18 because it was the successful party in securing the dismissal of Lane Myers's claims against it. With respect to National City, however, the trial court incorrectly granted summary judgment because the draw request certifications are not "in substantially the form provided" by the mechanics' lien act and therefore do not constitute enforceable waivers and releases. We therefore remand for additional proceedings consistent with this opinion. Our decision renders National City's cross-appeal moot.

_____
Stephen L. Roth, Judge

-----

¶24    WE CONCUR:

_____
Carolyn B. McHugh, Judge

_____
J. Frederic Voros Jr., Judge