493 P.2d 602

**ZIONS FIRST NATIONAL BANK, a National Association, et al., Plaintiffs and Respondents,**

**v.**

**Reginald L. SAXTON and Louise A. Saxton, his wife, et al., Defendants and Appellants.**

**No. 12472.**

Supreme Court of Utah.

Feb. 3, 1972.

Roy G. Haslam, Salt Lake City, for defendants-appellants.

Allen H. Tibbals, Edward F. Richards, Gary A. Frank, Richard H. Nebeker, Salt Lake City, for plaintiffs-respondents.

4. 171 Kansas 631, 237 P.2d 401 (1951).

ELLETT, Justice:

This is an appeal by defendant Hamilton from a judgment of the trial court denying him a lien on a tract of land known as Grand View Meadows.

Hamilton persuaded his nephew Reginald Saxton to purchase land for the purpose of building a trailer park upon it. Hamilton proposed to act as contractor and submitted a bid of $98,490 for the project to be built upon the five-acre tract. Without having paid for the land, Saxton took the bid to the plaintiff bank and made application for a bank Small Business Loan. Saxton's brother was an assistant manager of one of plaintiff's branch banks and was deeded a 10 percent interest in the project. The loan was approved on the basis of a total cost of $132,000, of which amount $85,000 was to be borrowed from the bank and the balance was to be furnished by defendant Reginald Saxton. At the time of applying for the loan the Saxtons failed to tell the bank that the trailer park was to be built on 20 acres and not on the five acres described in the loan application. The loan application stated that Reginald Saxton would inject into the project $37,000 cash plus the land valued at $10,000.

The plaintiff made a loan of $85,000 to the Saxtons and took as security a properly executed note secured by a trust deed on the five-acre tract. The owner of the land thereafter conveyed the same to the Saxtons and their wives, who paid $10,000 to the seller out of the $85,000 loan. Of this $10,000 paid, $7,500 was paid for the five-acre tract, and $2,500 was paid for an option to purchase an additional 28 acres adjoining the five-acre tract. No further payment was ever made by the Saxtons upon the option.

About a week after Hamilton started constructing a water line to the trailer park, Saxton advised him that he was expanding the park to include a total of 20 acres. Thereafter Hamilton worked on the 20-acre tract; and as the work progressed, he as the contractor would present bills together with lien waivers to the plaintiff bank and receive funds from the loan. As an inducement to get the bank to advance money, both Hamilton and Saxton would execute a document as follows:

In respect to the above referenced construction loan, we have incurred the charges as listed on this billing, for which we hereby request checks and lien waivers to be prepared and disbursed.

We certify and represent that all of the labor and materials for which these bills are presented have been used in the construction of this referenced unit, and that construction to date is acceptable and is in accordance with approved plans and specifications.

In addition, when Hamilton cashed the checks, he endorsed each one underneath a waiver in the following words:

> In consideration of payment of the within check, the payee upon endorsement hereby waives and releases all lien or right of lien now existing or that may hereafter arise for work or labor performed or materials furnished for the improvement of the following property:
>
> Grand View Meadows
> Tooele, Utah
> Loan 51032
>
> The payee hereby certifies that the labor or material, or both, for which this check is in payment was actually performed or used at the above described property.

As Hamilton would get a check from the bank, he would cash it and then write and deliver his own personal check to Reginald Saxton. The amount of money thus given to Saxton was $56,000. Hamilton claims that he performed work in the amount of $48,565 and that he only retained $18,000 of the proceeds of the loan and therefore the balance of $30,565 is due and owing to him and he has a lien on Grand View Meadows. He admits his lien is junior to the loan on the five-acre tract, but he claims a lien on the other 15 acres.

The matter is of importance because when practically all of the proceeds of the loan had been advanced, Reginald Saxton abandoned the project, and the bank for the first time learned that the funds had been spent for work done on 20 acres of land instead of on five acres. In order to protect itself, the bank then bought the 15 acres, which together with the deed of trust on the five acres gave it title to the land which had been improved with the money lent. Hamilton claims that his lien for work done on the 15-acre tract is superior to the interest of the plaintiff bank therein.

Reginald Saxton is now in a federal prison for income-tax evasion, and whether Hamilton is guilty of some misdeeds in the present matter need not now be decided.

This court in Holbrook v. Webster's Inc., 7 Utah 2d 148, 151, 320 P.2d 661 (1958), said:

> We are of the opinion that no genuine issue of fact is presented by the Lien Release. The only issue is one of law. It does not lie in the mouth of appellant to say that he was mistaken in the legal effect of the release or that he did not intend that it should be given the only legal effect of which it is susceptible.

In signing a lien waiver Hamilton waived all liens for the work done, and it matters not that unknown to the plaintiff bank some of the work for which money was received was performed on the 15-acre tract.

Liens were filed by seven lien claimants totalling $72,930. Only Hamilton has ap-

pealed from the ruling of the trial court, which was adverse to him. Aside from the proposition of whether he should have a lien after signing the waivers, there is another reason, to wit: he has been more than paid for his work. He received money greatly in excess of the $48,565 which he says represents the value of his labor and material. The fact that he gave $56,000 to Saxton is a matter of his own concern. He has been paid, and that fact would not be changed by paying Saxton $56,000 any more than it would be if he had lost $56,000 in a stock deal.

The judgment of the trial court is affirmed with costs to the respondent.

CALLISTER, C. J., and HENRIOD, TUCKETT and CROCKETT, JJ., concur.