*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2014 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

HUGHES GENERAL CONTRACTORS, INC. a Utah Corporation,
*Petitioner,*

*v.*

UTAH LABOR COMMISSION, Occupational Safety and
Health Division,
*Respondent.*

No. 20120426
Filed January 31, 2014

Original Proceeding in this Court

Attorneys:

Joseph D McAllister, North Salt Lake, Clark B. Fetzer,
John W. Mann, Salt Lake City, for petitioner

Sean D. Reyes, Att'y Gen., Brent A. Burnett, Ronald V. Ludlow,
Asst. Att'ys Gen., Salt Lake City, for respondent

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1   In this case we are asked to determine the viability of the so-called multi-employer worksite doctrine under the Utah Occupational Safety and Health Act (UOSHA). The doctrine makes a general contractor responsible for the occupational safety of all workers on a worksite—even those who are not the contractor's employees. Federal OSHA regulations adopt this doctrine, and federal courts have upheld it as consistent with the governing federal statute. But for us this is a matter of first impression.

¶2   We reject the multi-employer worksite doctrine as incompatible with the governing Utah statute, Utah Code section 34A-6-201(1). Specifically, we hold that the responsibility for ensuring

occupational safety under the governing statute is limited to an employer's responsibility to its employees. And because the cited contractor in this case was not an employer of the workers in question, we reverse the citation and penalty at issue.

I

¶3 This case arises out of a construction project at Parowan High School overseen by Hughes General Contractors. The project involved over 100 subcontractors, including B.A. Robinson, which performed masonry work. During the course of this project, Hughes was cited by the Utah Occupational Safety and Health Division for a range of workplace safety violations. The violation at issue here concerned improper use and erection of scaffolding in connection with masonry work performed by B.A. Robinson.

¶4 UOSH cited and fined both Hughes and B.A. Robinson for this violation. As to Hughes, the citation was based on its failure to inspect and take corrective action, as required by Utah Administrative Code rule 614-1-5(D)(3). In determining that Hughes was responsible for safety conditions for B.A. Robinson's employees, the UOSH compliance officer invoked the multi-employer worksite doctrine. Specifically, the officer concluded that Hughes was responsible as a controlling employer under Utah Code section 34A-6-201, in that it had general supervisory authority over the worksite.

¶5 Hughes contested the citation, challenging the legal viability of the multi-employer worksite doctrine and the factual basis for the alleged violation. The citation was upheld by an Administrative Law Judge, whose decision was affirmed on appeal to the Labor Commission's Appeals Board. Both the ALJ and the Appeals Board upheld the multi-employer worksite doctrine. The Appeals Board based its decision on the notion that the governing Utah statute, section 34A-6-201, "mirrors its federal counterpart, which was interpreted in *Universal Construction Co. v. Occupational Safety and Health Review Commission*, 182 F.3d 726 (10th Cir. 1999)," to endorse the principle that "a general contractor [is] liable for the safety violations of a subcontractor under the multi-employer worksite doctrine."

¶6 Hughes sought review in the Utah Court of Appeals pursuant to Utah Code section 78A-4-103(2)(a)(i)(A), which then certified the case to this court. The issues presented are questions of

law, concerning the viability of the multi-employer worksite doctrine under UOSHA. Specifically, Hughes seeks reversal on the grounds that "the agency has erroneously interpreted or applied the law" and "the agency has acted beyond the jurisdiction conferred by any statute" in so doing. UTAH CODE § 63G-4-403(4)(d), (b). Those arguments present questions of law subject to review for correctness. *Utah Chapter of the Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 13, 226 P.3d 719; *see Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 24, 308 P.3d 461.

## II

¶7 The multi-employer worksite doctrine has been repeatedly challenged and upheld under federal law. *See infra* ¶ 20. But we have never had occasion to consider it as a matter of Utah law, and the state law issue is distinct.

¶8 The governing Utah statute, Utah Code section 34A-6-201, is not a mirror-image of its federal counterpart, 29 U.S.C. § 654(a). Under federal law, moreover, the doctrine finds support in an express federal regulation, 29 C.F.R. § 1926.16(c), a provision afforded deference by the courts under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Our Utah regulations have not incorporated the federal provision to which the federal courts have deferred in upholding the multi-employer worksite doctrine. And in any event our law affords no deference to federal regulations on questions of law. *See infra* ¶ 25.

¶9 We thus address the legality of the multi-employer worksite doctrine on a clean slate under Utah law. And we hold that the governing state OSHA provision forecloses it. In so ruling, we distinguish the federal cases relied on by the ALJ, the Appeals Board, and the Labor Commission, and we also dismiss the policy basis advanced in support of the doctrine. And we reverse the citation and penalty against Hughes, as it was based on a legal ground that we now repudiate.

## A

¶10 The governing UOSHA provision imposes responsibilities for occupational safety on an "employer." It requires that "[e]ach employer . . . furnish each of the employer's employees employment and a place of employment free from recognized hazards that are causing or are likely to cause death or physical harm to

the employer's employees and comply with the standards promulgated under this chapter." UTAH CODE § 34A-6-201(1).

¶11 The question presented concerns the scope of these responsibilities. The Utah Labor Commission interpreted this provision to extend broadly to anyone with supervisory control over a particular worksite. Hughes contests this "multi-employer" approach, insisting that the safety responsibilities prescribed by this provision extend only to a single employer as concerning its own employees.

¶12 We read the statute as Hughes does. First, the text and structure of this provision are singularly focused on the employment relationship. Thus, the sole subject of the single sentence comprising this provision—the term identifying the persons to whom the prescribed occupational safety responsibilities run—is "[e]ach employer." *Id*. So the duty to furnish a workplace free from recognized hazards is one that runs only to "[e]ach employer." *Id*. And the same goes for the duty to "comply with the standards promulgated under this chapter." *Id.* Under the clear text of the statute, this obligation also runs only to employers.

¶13 "Employer," moreover, is defined in terms that contemplate a traditional employment relationship—and that accordingly forecloses the multi-employer worksite principle applied below. By statute, an "employer" is "a person . . . having one or more workers or operatives regularly *employed* in the same business, or in or about the same establishment, under any contract of hire." *Id.* § 34A-6-103(1)(f)(iii) (emphasis added). So an employer is one who engages employees under a contract of hire. And "employee," in turn, is defined in a similarly circular manner. An "employee" is "any person suffered or permitted to work *by an employer*." *Id.* § 34A-6-103(1)(e) (emphasis added).

¶14 The circular terminology of the statutory definitions drives home a key to its meaning. By defining "employer" as one who engages an employee, and "employee" as one who works for an employer, the legislature conveyed its acceptance of a term of art with a widely shared meaning. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (appealing to the common-law meaning of the term "employee" when faced with a circular statutory definition); *Kelson v. Salt Lake Cnty.*, 784 P.2d 1152, 1156 (Utah 1989) (interpreting the term "heirs" in wrongful death statute to

incorporate the term of art meaning of the term under the Probate Code).

¶15 The legal term-of-art understanding of the employment relationship focuses on the employer's "right to control the employee." *Dyson ex rel. Glover v. Boy Scouts of Am.*, 923 P.2d 1383, 1386 (Utah 1996). Thus, the relevant control is not over the premises of a worksite, but regarding the terms and conditions of employment. In identifying factors of relevance to the inquiry into the right to control, our cases have looked to the existence of "covenants or agreements . . . concerning the right of direction and control over the employee," the "right to hire and fire," the "method of payment (i.e., wages versus payment for a completed job or project)," and "the furnishing of equipment." *Id.* at 1385–86.

¶16 This concept of employment forecloses the "multi-employer" construct that was the basis for the UOSHA citation against Hughes. Hughes had no employment relationship in connection with the safety violation involving B.A. Robinson's masonry work. The scaffolding problems in question involved workers engaged under the control of B.A. Robinson, not Hughes. As the sole employer involved in the masonry work and the scaffolding it required, only B.A. Robinson had the statutory responsibility to provide a workplace free of recognized hazards and to comply with standards promulgated under UOSHA.

¶17 Hughes was not an "employer" in connection with the work done by B.A. Robinson's workers. It had none of the rights of control identified in our cases—as to hiring and firing, method of payment, etc. Instead it had only general supervisory authority over the worksite. That did not render it an employer subject to sanctions for failure to comply with UOSHA.

¶18 The "multi-employer" construct is a misnomer—an attempt to shoehorn the notion of a general contractor's authority over a worksite into the employment-focused standard of the statute. Typically a general contractor is not an employer vis-à-vis the workers of its subcontractors. And typically there is only one employer as to any one group of workers. Where that is true (as it is here), it is only the employer that is subject to sanctions under Utah Code section 34A-6-201.

¶19 We reverse the citation against Hughes on that basis. We reject the multi-employer worksite doctrine as a matter of Utah

law, and reverse the UOSHA sanction against Hughes, as it was rooted in that construct and not on Hughes's status as an employer.

B

¶20 Federal courts have generally upheld the multi-employer worksite doctrine as a matter of federal law. Under the governing federal statute, 29 U.S.C. § 654(a), the courts have consistently held that a general contractor bears the responsibility to provide a workplace free of recognized hazards and to comply with federal OSHA standards.[1]

¶21 The ALJ and the Appeals Board found this federal authority persuasive. We do not. It is distinguishable on two principal grounds.

¶22 First, the terms of the federal statute are distinct. The main difference between the two provisions is structural, in that the federal statutory duty to "comply with occupational safety and health standards promulgated under this Act" is set forth in a separately sub-sectioned provision. *See* 29 U.S.C. § 654(a)(2). Our Utah provision, by contrast, is unitary—setting forth the responsibility of "[e]ach employer" to provide a place of employment free of recognized hazards and to comply with promulgated standards in a single, undifferentiated provision.

¶23 This structural difference is at least arguably significant. Under federal law, it is more plausible to conclude that the duty to comply with OSHA standards runs to non-employers.[2] We find

---

[1] *Universal Constr. Co. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 730 (10th Cir. 1999); *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 983 (7th Cir. 1999); *Teal v. E. I. DuPont de Nemours & Co.*, 728 F.2d 799, 804 (6th Cir. 1984); *Brennan v. Occupational Safety & Health Review Comm'n*, 513 F.2d 1032, 1038 (2d Cir. 1975). *But see Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 712 (5th Cir. 1981) ("[T]he class protected by OSHA regulations comprises only employers' own employees.").

[2] *Universal Constr. Co.*, 182 F.3d at 728, 730 (citing *Pitt-Des Moines, Inc.*, 168 F.3d at 983 (noting the structural distinction between 29 U.S.C. § 654(a)(1) and (2), and upholding the multi-

that construction untenable under our statute for reasons noted above, which are reaffirmed by the unitary structure of the Utah provision—emphasizing that both the duty regarding recognized hazards and the duty to comply with promulgated standards are part and parcel of the employment relationship. But we also note that the federal statute is at least plausibly subject to a contrary construction.

¶24 Second, the federal cases cited by the ALJ and Appeals Board and advanced by the Labor Commission here are distinguishable on another ground: The federal caselaw is based on a principle of administrative deference under *Chevron*, 467 U.S. 837. Under *Chevron*, the existence of ambiguity in a statute subject to implementation by a federal agency requires judicial deference to the agency's resolution of the ambiguity. *See Fed. Nat'l Mortg. Ass'n v. Sundquist*, 2013 UT 45, ¶ 19, 311 P.3d 1004. Thus, if a federal statute is ambiguous on a question resolved by an implementing agency, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (internal quotations marks omitted). This is the basis of the federal caselaw upholding the multi-employer worksite doctrine as a matter of federal law. By and large, the federal courts have not rendered an independent assessment of the meaning of 29 U.S.C. § 654(a). They have simply found the federal statute less than clear, and thus deferred to a federal agency regulation construing the statute to allow for the multi-employer worksite doctrine.[3]

---

employer worksite doctrine in light of the arguable distinction in the terms of the two sub-sections)).

[3] *See Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 827 (8th Cir. 2009) ("[W]e defer to the Secretary's reasonable interpretation that § 1910.12(a) does not preclude the controlling employer citation policy."); *Universal Constr. Co.*, 182 F.3d at 729 ("Because § 654(a)(2) is ambiguous regarding this issue [the multi-employer doctrine], we consider if the agency's interpretation is based on a permissible construction of the statute and does not frustrate the policy underlying the Act."). *But see Teal*, 728 F.2d at 805 ("[O]nce an employer is deemed responsible for complying with OSHA regulations," the statute imparts a duty "to protect every employee who works at its workplace," even the employees of independent contractors.); *Brennan*, 513 F.2d at 1037 (interpreting the stat-

¶25 This approach is not a viable one under Utah law. On pure questions of law, we have not adopted a *Chevron*-like standard of administrative deference. *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 22, 308 P.3d 461.[4] In fact our caselaw has openly repudiated that approach.[5] Understandably. A key justification for *Chevron* deference to federal agencies is national uniformity—the avoidance of a patchwork of federal standards among the numerous federal circuit courts of appeals.[6] That concern is not implicated in our state system, in which we have a single line of appellate courts and thus no real prospect for a split of judicial authority. So we have retained for the courts the de novo prerogative of inter-

---

ute to impose a "broad[] duty to keep a work area safe for any employees having access to that area").

[4] This is not to say that we never defer to agency action. There are certain circumstances in which deference is warranted by our caselaw, such as when an agency makes a factual determination, or "whenever the Legislature directs an agency to engage in [discretionary] decision-making." *Murray*, 2013 UT 38, ¶ 30. A "discretionary decision involves a question with a range of 'acceptable' answers, some better than others, and the agency . . . is free to choose from among this range without regard to what an appellate court thinks is the 'best' answer." *Id.* Statutory interpretation does not present such a discretionary decision, because "questions of law . . . ha[ve] a single 'right' answer." *Id.* ¶ 33.

[5] *See Murray*, 2013 UT 38, ¶ 22 ("[T]he applicable standard of review will depend on the nature of the agency action and whether it can be characterized as a question of law, a question of fact, or a mixed question of law and fact."); *Utah Chapter of the Sierra Club v. Bd. of Oil, Gas, & Mining*, 2012 UT 73 ¶ 9, 289 P.3d 558 ("[W]e review an agency's general interpretations of law for correctness, granting little or no deference to the agency's determination.") (internal quotation marks omitted).

[6] *See* Peter L. Strauss, *One Hundred Fifty Cases per Year: Some Implications of the Supreme Court's Limited Resources for Judicial Review of Agency Action*, 87 COLUM. L. REV. 1093, 1106 (1987).

preting the law, unencumbered by any standard of agency defer-ence.[7]

¶26 The question for us is thus different from the one resolved by the cited federal cases. And we resolve that question different-ly, finding in our statute no room for the multi-employer worksite doctrine advanced by the Labor Commission.

C

¶27 The question before us is a matter of statutory interpreta-tion. And our role in that endeavor is to determine the meaning of the statutory language. Having done so, we are in no position to pick sides in the policy debate engaged in by the parties in their briefs before us.

¶28 It may well be, as the Labor Commission advocates, that a broad multi-employer duty to assure compliance with the stand-ards of UOSHA would enhance workplace safety in Utah. And it is also true that a principal purpose of our OSHA statute is to en-hance the safety of the Utah workplace. But we cannot from that infer a legislative intent to extend the statutory duties in Utah Code section 34A-6-201(1) to general contractors. As we have re-peatedly noted, legislation is rarely a result of an attempt to ad-vance a single cause at all costs, and is almost always a balance of competing objectives.[8] That is certainly the case with UOSHA.

---

[7] In Utah, in any event, we would have no agency regulation to defer to. The federal regulation upheld by the courts under feder-al law is 29 C.F.R. § 1926.16(c). But that provision is omitted from the various federal regulations embraced in our state regulations. *See* UTAH ADMIN CODE r. 614-1-4(B)(1) (incorporating "Section 29 CFR 1926.20 through the end of part 1926," thus excluding part 1926.16(c)).

[8] *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 23 & n.6, 248 P.3d 465 (holding that a party's "speculation as to a contrary legis-lative purpose cannot quash our construction of the plain lan-guage," and noting "the peril of interpreting statutes in accord-ance with presumed legislative purpose, particularly given that most statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil"); *Myers v. Myers*, 2011 UT 65, ¶ 27, 266 P.3d 806 ("Legislation is rarely aimed at advancing a single objective at

Workplace safety is at its core, but the statute also obviously balances concerns for fairness to employers.

¶29  In any event, the interpretive function for us is not to divine and implement the statutory purpose, broadly defined. It is to construe its language. Where, as here, that language dictates an answer to the question presented, we are not at liberty to adopt a different one because we think it might better advance the legislature's purpose as we understand it.[9]

### D

¶30  We therefore repudiate the multi-employer worksite doctrine as incompatible with Utah Code section 34A-6-201(1). And we reverse the decision of the Appeals Board and the sanction against Hughes that was based on this doctrine.

———————

the expense of all others. More often, statutes are a result of a legislative give-and-take that balances multiple concerns.") (internal quotation marks omitted).

[9] *Schroeder Invs., L.C. v. Edwards*, 2013 UT 25, ¶ 25, 301 P.3d 994 ("Any request that we override clear statutory text on policy grounds misperceives the judicial function. . . . We . . . must implement the particular balance of policies reflected in the terms of [the] statute. Those terms are the law—even when we might find the policies behind the statute should properly have dictated a different rule. Public policy concerns, however grave, do not deputize this court to ignore the terms a statute and act legislatively." (third alteration in original) (internal quotation marks and citations omitted)).