*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 58**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

---

LANE MYERS CONSTRUCTION, LLC,
*Respondent,*

*v.*

NATIONAL CITY BANK, NATIONAL CITY BANK OF INDIANA,
*Petitioners.*

---

No. 20121004
Filed December 19, 2014

---

On Certiorari to the Utah Court of Appeals

---

Third District, Silver Summit Dep't
The Honorable Bruce C. Lubeck
No. 070500707

---

Attorneys:

Rick L. Sorensen, Salt Lake City, for respondent

Lincoln Harris, Zachary E. Peterson, Paul P. Burghardt,
Salt Lake City, for petitioners

---

JUSTICE LEE authored the opinion of the Court, in which JUSTICE PARRISH joined and in which CHIEF JUSTICE DURRANT and JUSTICE DURHAM each joined in part.

CHIEF JUSTICE DURRANT filed a concurring opinion, in which ASSOCIATE CHIEF JUSTICE NEHRING joined in part.

JUSTICE DURHAM filed a concurring opinion, in which ASSOCIATE CHIEF JUSTICE NEHRING joined in part.

ASSOCIATE CHIEF JUSTICE NEHRING filed a concurring opinion.

---

JUSTICE LEE, opinion of the Court:

¶1 Dick and Kim Kyker hired Lane Myers Construction to build two separate homes. The Kykers secured a construction loan through National City Bank, and the bank periodically paid Lane Myers on draw request forms that included language stating that Lane Myers had no lien on the property. The question presented is whether the draw request forms effected an enforceable lien waiver under the Utah Mechanics' Lien Act.[1]

¶2 The district court entered summary judgment for the Kykers and National City, holding that the draw requests were in substantial compliance with the Act and thus effected a waiver foreclosing Lane Myers's lien claim. The court of appeals reversed. It held that the forms were not in substantial compliance with the Act because they failed to incorporate the essential elements of the "forms" included in the Act. UTAH CODE § 38-1-39(4)(b) (2010).

¶3 We reverse and remand. In the circumstances of this case, we interpret the Act to require only "a waiver and release that is signed by the lien claimant or the lien claimant's authorized agent." *Id.* § 38-1-39(2)(a)(i). And we interpret that requirement to incorporate the established, term-of-art understanding of the elements of a "waiver." Thus, we view the forms set forth in the statute as only a safe harbor, and not a requirement. Under the standard as clarified below, however, we decline to affirm entry of summary judgment for the Kykers and National City. Instead, finding genuine issues of material fact on the current record, we remand to the district court for further proceedings.

I

¶4 In 2006, Lane Myers agreed to build two homes for Kim and Dick Kyker, one in Park City and the other in Oakley. Although Lane Myers also asserted a lien against the Oakley

---

[1] UTAH CODE §§ 38-1-1 to -40 (2010). The 2010 version of the Act is identical to the version that was in place at the time of the events in question here, *Lane Myers Constr., LLC v. Countrywide Home Loans, Inc.*, 2012 UT App 269, ¶ 1 n.2, 287 P.3d 479, and the court of appeals elected to cite to that version in its opinion. To remain consistent with the court of appeals and for ease of reference we also cite to the 2010 version of the Act in this opinion.

property, only the facts concerning the Park City home are relevant to this appeal.

¶5    The Kykers obtained a construction loan from National City in order to pay Lane Myers for the construction of the Park City home. Lane Myers commenced construction that year, and between June 14, 2006, and August 22, 2008, it submitted a total of sixteen draw requests to National City. Although Lane Myers submitted these draw requests directly to National City, it alleges that it did not know the total amount of the construction loan. But despite this fact, when it signed each of these draw requests Lane Myers certified that the "available proceeds of the loan are sufficient to finally and fully complete and pay for completion of improvements" and that "no suppliers, subcontractors, laborers, or other persons are claiming or are entitled to claim a lien against the property securing the loan."

¶6    Although Lane Myers submitted sixteen draw requests, National City fully funded only five of them. Lane Myers repeatedly asked National City why its requests were being only partially funded, and each time National City responded by stating that there were either unauthorized cost overages in the requests or that, based on an inspection of the property, a full disbursement was not warranted. Lane Myers also informed the Kykers of the shortages, and the Kykers repeatedly assured Lane Myers that they would "take care of it." In fact, at one point the Kykers even sent Lane Myers funds from a different account to cover the shortages, but then requested that those funds be applied to the Oakley property.

¶7    At the time, Lane Myers submitted its fifteenth draw request it was owed a balance of $357,560.98. When it received a disbursement of just $21,140.60 from National City, it again called National City to inquire about the discrepancy. This time, National City informed Lane Myers that the only funds left in the account were "retainage that National City was holding until a certificate of occupancy was issued by the city." According to Lane Myers, this was the first time it realized that the Kykers' construction loan would not cover all of the construction costs for the Park City home.

¶8    Nevertheless, despite being owed over $300,000, Lane Myers submitted its sixteenth and final draw request to National City on August 22, 2008, for just $105,702.99. National City instructed Lane Myers to use the same form for the final draw request as it had for the prior requests, but to handwrite "Final

Draw" at the top of the form, presumably to make the following language operative:

> IF THIS IS THE FINAL DRAW I/WE FURTHER CERTIFY THAT:
>
> 1. The General Contractor has to date been paid in full for all work performed and for all labor, materials furnished by the General Contractor and all sub-contractors, materialmen, suppliers and laborers and that no such sub-contractors, suppliers, or materialmen, laborers or other persons providing goods and services used in the improvements to the property have unpaid claims. . . .
>
> 2. That no liens or claims that may result in liens exist against the above-described property other than as set forth herein.
>
> 3. That the General Contractor has received payments for all stages of construction/rehabilitation of the property other than the final disbursement.
>
> 4. That the borrower(s) has/have requested, from the Lender, final disbursement of the construction/rehab funds in order to make final payment to the General contractor and that upon said disbursement by Lender the General Contractor will be paid in full under the Construction Contract.

¶9 Lane Myers alleges that it had reservations about submitting a "final" draw request that would not cover the total amount it was owed, but asserts that it did so because (a) the Kykers had informed it that they would pay any remaining balance after the final draw personally, (b) the Kykers were working with a mortgage broker in order to secure the funds to do so, and (c) National City explained to Lane Myers that the handwritten words "final draw" only referred to "the 'final draw' of the amounts available for reimbursement from the loan and not to a final payment of any amounts that may still be owed by the homeowner . . . for costs in excess of the amounts available for reimbursement from the loan." Allegedly in reliance on these assurances, Lane Myers signed the request on August 30, 2007, and received $105,702.99.

4

¶10 The Kykers failed to repay Lane Myers as promised, however, which resulted in Lane Myers recording a mechanic's lien against the property on November 15, 2007, for $576,366.93. Lane Myers then filed suit against the Kykers on December 12, 2007, seeking both to enforce its lien by foreclosing on the Park City home and to recover over $890,000 in damages. Lane Myers subsequently amended its complaint to include National City in order to establish priority over National City's trust deed.

¶11 The Kykers moved for summary judgment, arguing that the draw requests constituted "lien waivers" and that by signing them and accepting the funds from the construction loan, Lane Myers had waived its right to file a mechanic's lien. The motion was later amended and asserted on behalf of both the Kykers and National City. In opposition, Lane Myers did not contest that it had signed the draw requests or that it had received funds from the loan; instead, it argued that the draw requests were not "lien waivers" because they did not "substantially comply" with the portion of the Act governing waivers of the right to file a mechanic's lien.

¶12 The district court agreed with the Kykers and National City and granted their motion, concluding that the draw requests "compl[ied] substantially with Utah law" in "effectively and clearly, on their face, releas[ing] any claims for work done prior to the date of execution." Accordingly, the district court dismissed Lane Myers's mechanic's lien claim with prejudice. Lane Myers filed a timely appeal.

¶13 On appeal, the court of appeals reversed. It interpreted the Act to require a lien waiver to be "substantially" in the form provided in section 38-1-39(4). *Lane Myers Constr., LLC v. Countrywide Home Loans, Inc.*, 2012 UT App 269, ¶¶ 16–17, 287 P.3d 479. Thus, although the court viewed the statutory form as a "safe harbor for lenders" and not a hard-and-fast requirement of the Act, *id.* ¶ 16, it concluded that "the legislature has indicated its intent that a valid waiver and release at least contain each of the component parts the form includes, in substance and effect if not in the identical language." *Id.* ¶ 17.

¶14 Ultimately, the court of appeals identified "four distinct components" of the statutory form that it deemed "important . . . to effectively waive and release lien rights for the benefit of a lender" and "to ensure that the contractor is clearly on notice that as a consequence of signing the form, he or she is relinquishing core protections of the mechanics' lien act in connection with a

particular project on specific property." *Id.* ¶¶ 18, 19. Those elements were (1) "a statement that the document is intended to be a waiver and release in accordance with Utah law"; (2) "specific information pertinent to the particular lien rights subject to waiver and release, including 'Property Name,' 'Property Location,' the identity of the '[Contractor]'s Customer,' 'Invoice/Payment Application Number,' and 'Payment Amount'"; (3) "explicit notice to the contractor of the effect that signing the release will have on rights otherwise available to it under the mechanics' lien act and the conditions upon which the waiver of those rights becomes effective"; and (4) the contractor either "represent[s] that all those who might have subordinate lien claims have been paid or … promise[s] that the funds received in exchange for the waiver and release will be used to make such payments." *Id.* ¶ 18 (first alteration in original). Because the draw requests in this case did not "contain all the required components of a valid form," the court of appeals held that "Lane Myers did not execute a waiver and release that complies with the statute" and thus that "the trial court erred in granting summary judgment in favor of National City." *Id.* ¶¶ 20, 21.

¶15 National City and the Kykers filed a timely petition for certiorari, which we granted. Our review of the issues before us is de novo. *Torian v. Craig,* 2012 UT 63, ¶ 13, 289 P.3d 479 ("We review the district court's grant of summary judgment for correctness."); *Bahr v. Imus,* 2011 UT 19, ¶ 12, 250 P.3d 56 ("[W]e have consistently reviewed decisions on summary judgment for correctness, according no deference to [the] trial court's analysis.").

## II

¶16 The question presented concerns the required content of a waiver of a mechanic's lien under Utah Code section 38-1-39(2). Two distinct views were embraced in the courts below. The district court held that Lane Myers's draw requests effected an enforceable waiver because they "clearly, on their face, released any claims for work done prior to the date of execution." The court of appeals reached a contrary conclusion. It did so on the ground that the draw requests failed to incorporate the essential elements of the waiver form provided in Utah Code section 38-1-39(4).

¶17 We read the statute somewhat differently than the court of appeals, but also take issue with the breadth of the standard

employed by the district court. In our view, the form set forth in Utah Code section 38-1-39(4)(b) and (c) is merely a safe harbor, and not a requirement for execution of an effective lien waiver under section 38-1-39(2)(a)(i). Thus, we hold that the sole criteria for the execution of an effective lien waiver are those set forth in section 38-1-39(2)—the execution of a "waiver and release that is signed by the lien claimant or the lien claimant's authorized agent," and the receipt of "payment of the amount identified in the waiver and release." *Id.* § 38-1-39(2)(a)(i), (b).

¶18 That said, we also stop short of categorically endorsing the district court's approach. Specifically, we read the statutory requirement of a "waiver and release" to incorporate the established elements of the legal concept of a "waiver." And because we see unresolved questions of fact of relevance to that concept, we reverse and remand for further proceedings consistent with this opinion.

A

¶19 The Utah Mechanic's Lien Act prescribes two sets of standards for measuring the sufficiency of a waiver of a statutory lien right. First, as a general rule a lien waiver is "enforceable only if the lien claimant . . . . executes a waiver and release that is signed by the lien claimant or the lien claimant's authorized agent." UTAH CODE § 38-1-39(2)(a)(i). Second, the statute prescribes a separate standard for a waiver that is effected by a "restrictive endorsement on a check." *Id.* § 38-1-39(2)(a)(ii). For that type of waiver the statute requires "a restrictive endorsement on a check that is: (A) signed by the lien claimant or the lien claimant's authorized agent; and (B) in substantially the same form set forth in Subsection (4)(d)." *Id.*

¶20 The significance of the forms set forth in subsection (4) of the Act thus depends on whether or not the waiver in question is one provided on a "restrictive endorsement on a check." For that sort of waiver, the statute requires that it be "in substantially the same form set forth in Subsection (4)(d)." But for all other waivers the statute requires only a "waiver and release that is signed by the lien claimant or the lien claimant's authorized agent." Thus, conformance with the "form set forth in Subsection (4)(d)" is not an element of the general rule; this requirement applies only to waivers on a "restrictive endorsement on a check."

¶21 Nothing in subsection (4) suggests otherwise. The language of that subsection is distinctly permissive, not

prescriptive. It indicates that a "waiver and release given by a lien claimant meets the requirements of this section if it is in substantially the form provided in this Subsection (4) for the circumstances provided in this Subsection (4)." UTAH CODE § 38-1-39(4)(a); *see also id.* § 38-1-39(4)(b) (for a waiver and release in connection with "payment of a progress billing"); *id.* § 38-1-39(4)(c) (same language for waiver and release in connection with "payment of a final billing"). The permissive terms of subsection (4)—"meets the requirements of this section if it is in substantially the form provided"—are unmistakably that of a safe harbor, not a prerequisite.

¶22 The court of appeals acknowledged the permissive, safe-harbor nature of the "precise language" of the forms set forth in subsection (4). *Lane Myers Constr. LLC v. Countrywide Home Loans, Inc.*, 2012 UT App 269, ¶ 16, 287 P.3d 479. But it nonetheless concluded that substantial compliance with the forms was a part of the "overarching standard for an enforceable waiver and release." *Id.* ¶ 17. And it accordingly identified "four distinct components" of the forms that it deemed "important . . . to effectively waive and release lien rights." *Id.* ¶¶ 18, 19.

¶23 We see no statutory basis for this construct. Subsection (4) invokes *substantial compliance* as a prerequisite to the statutory safe harbor, not an element of the threshold standard for enforceability of a waiver. And subsection (2) plainly requires substantial compliance with the forms *only* for a waiver in a restrictive endorsement on a check. UTAH CODE § 38-1-39(2)(a)(ii)(A)–(B). The lack of a parallel requirement in subsection (2) for lien waivers generally yields a powerful negative inference: Lien waivers generally need not follow the forms set forth in subsection (4); substantial compliance with the forms is a requirement only for waivers effected by a restrictive endorsement on a check.[2]

---

[2] *See, e.g., Bailey v. United States*, 516 U.S. 137, 146 (1995) (contrasting 18 U.S.C. § 924(d)(1), which provided for forfeiture of a firearm when it was "used" or "intended to be used" in certain crimes, and § 924(c)(1), which provided for a sentencing enhancement for a person who "used" a firearm in a drug trafficking crime; interpreting the § 924(c)(1) provision to be limited to actual use, while crediting the difference between the two provisions and inferring that "Congress intended each of [the] terms" of the statute "to have meaning").

B

¶24 In reaching the contrary conclusion, the court of appeals noted that our precedents have long advocated the "broad" interpretation of the Mechanics' Lien Act in furtherance of a perceived purpose of the legislature—"'to protect, at all hazards, those who perform the labor and furnish the materials which enter into the construction of a building or other improvement.'" 2012 UT App 269, ¶ 15 (quoting *Sill v. Hart*, 2007 UT 45, ¶ 8, 162 P.3d 1099). Lane Myers advances these same points as grounds for a ruling in its favor, insisting on a broad construction of the Act in furtherance of this purported legislative purpose.

¶25 We recently rejected a parallel argument under the Workers Compensation Act, in *Jex v. Utah Labor Commission*, 2013 UT 40, 306 P.3d 799. In that case a plaintiff asserting a right to workers compensation benefits claimed the benefit of a line of cases calling for a liberal construction of the Workers Compensation Act in a manner giving claimants the benefit of "any doubt" on matters of statutory construction. *Id.* ¶ 52 (quoting *Salt Lake City Corp. v. Utah Labor Comm'n*, 2007 UT 4, ¶ 16, 153 P.3d 179). We rejected that argument in *Jex*, on terms that apply by extension here.

¶26 First, our *Jex* opinion characterized the "dicta" advocating resolution of "any doubt" in favor of a claimant as "hyperbole." *Id.* ¶ 53. Noting that "[t]he judicial process is premised on doubt," we concluded that mere doubt "cannot be enough to generate a benefit-of-the doubt presumption in favor of coverage." *Id.* ¶¶ 53, 54. Thus, in *Jex* we refined the dicta in our past cases, adopting a narrow variation on the liberal interpretation standard under which "[t]he benefit of the doubt owing to workers' compensation claimants comes at the back end of the litigation—after the judge . . . makes a run at . . . clarifying gray areas of law." *Id.* ¶ 56. In other words, we clarified that our canon of liberal construction was simply a tie-breaker, giving the benefit of the doubt to the claimant "[i]n the rare case where [the judicial] process yields genuine doubt—in a dead heat without an apparent winner." *Id.*

¶27 We apply and extend that same analysis here. "Our hyperbole notwithstanding, it cannot literally be true that" the Mechanics' Lien Act is intended to protect lien claimants "at all hazards." *Id.* ¶ 53; *Lane Myers*, 2012 UT App 269, ¶ 15. Realistically, we must acknowledge that this statute, like any other, "represent[s] an attempt by the legislature to balance

competing policy considerations, not to advanc[e] a single objective at the expense of all others." *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 14, 274 P.3d 981 (second alteration in original) (internal quotation marks omitted). As National City pointed out in its brief, the Act does more than just protect lien claimants in every conceivable situation; it balances those lien rights with the right to effectively contract away those liens in exchange for payment, and the ability of lenders to rely on those agreements. And accordingly, we must reserve the notion of broad construction for cases of genuine doubt. Having resolved that doubt under the language and structure of the statute, we find no need for a tie-breaker, and thus no relevance for the principle of liberal construction of the Act.

¶28 We accordingly reverse the court of appeals. Thus, we interpret subsection (2) of the statute to tie the enforceability of a general lien waiver to only those elements expressly prescribed in that subsection—to the execution of a "waiver and release that is signed by the lien claimant or the lien claimant's authorized agent." UTAH CODE § 38-1-39(2)(a)(i).

C

¶29 Our construction of the statute, however, also runs counter to the position embraced by the district court. Unlike the district court, we do not see a basis for dismissing Lane Myers's lien claims as a matter of law. For us, the enforceability of the waiver in question cannot be resolved on the basis of the "face" of the draw requests. *Lane Myers*, 2012 UT App 269, ¶ 6. Instead we see genuine issues of material fact under the principle of "waiver" incorporated in the Mechanic's Lien Act.

¶30 The operative terms of the Act make the enforceability of a lien waiver contingent on the execution of a "waiver and release that is signed by the lien claimant or the lien claimant's authorized agent." UTAH CODE § 38-1-39(2)(a)(i). In circularly conditioning the effectiveness of a "waiver" on the execution of a "waiver," the legislature appears to have embraced a "term of art with a widely shared meaning." *Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 14, 322 P.3d 712 (concluding that a "circular" statutory definition utilizing a legal term of art— "employer"—is understood to adopt a "term of art with a widely shared meaning"); *see also State v. Bagnes*, 2014 UT 4, ¶ 21, 322 P.3d 719 (interpreting statutory definition of "lewdness," defined

in circular terms to incorporate "any other act of lewdness," to embrace a "'widely shared meaning" of the term).[3]

¶31 We accordingly interpret the statute to incorporate the elements of a "waiver" as defined in our settled caselaw. Under that caselaw "[a] waiver is the intentional relinquishment of a known right." *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993). Thus, "[t]o constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." *Id.*

¶32 This is not to say, as Chief Justice Durrant's concurrence suggests, that the statutory forms are "irrelevant," *infra* ¶ 42, or should be "ignore[d]" by the courts in applying the statutory standard. *Infra* ¶ 45. The value of the forms as a safe harbor—to be used by contracting parties that wish to be certain of their position without engaging in litigation—is considerable. And, while the focus of the analysis should be on the term-of-art understanding of waiver, the forms may still be helpful—in providing illustrations and contextual background for the assessment of whether the parties intended to execute such a waiver.[4]

---

[3] Although the statute speaks in terms of "waiver and release," UTAH CODE § 38-1-39(2)(a), the term *release* appears to be a lesser-included concept that adds nothing to the notion of *waiver*. Thus, a *release* is a "relinquishment or concession of a right, title, or claim," BLACK'S LAW DICTIONARY 1403 (9th ed. 2009), whereas *waiver* requires that the relinquishment be of a *known* right. *Soter's Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993). Because any *release* would also qualify as a *waiver*, we define the statutory requirement in terms of the more stringent standard of *waiver*—of voluntary relinquishment of a known right.

[4] Our recent holding in *America West Bank Members, L.C. v. State*, 2014 UT 49, P.3d ___, is not to the contrary. *See infra* ¶ 39 n.2. In that case, we turned to the forms in the Utah Rules of Civil Procedure to illustrate the detail necessary to assert the "short and plain statement" required to state a claim under rule 8(a), concluding that the complaint at hand was materially deficient. *Am. West Bank*, 2014 UT 49, ¶ 17. But we did not use the forms to glean hard-and-fast requirements that all complaints must meet to be viable. Instead we invoked the forms as illustrative of a floor for the pleading standard set forth in the rules. *See id.* And in any event, the terms of rule 8(a) are substantially different from those

¶33 We reverse and remand under this standard, as there are genuine issues of material fact precluding summary judgment on this record. The terms of the release in the Lane Myers draw requests are insufficient by themselves to establish an enforceable waiver.[5] To be entitled to judgment as a matter of law, the Kykers and National City would also have to establish knowledge of a right to a lien and intentional relinquishment of such right.

¶34 The element of intent is the "central focus in most waiver cases," as it is the element most often in dispute. *Soter's*, 857 P.2d at 940. And the intent question is "intensely fact dependent," turning on "whether the totality of the circumstances warrants the inference of relinquishment." *Id.* at 940, 942 (internal quotation marks omitted). Because the draw requests in question do not take advantage of the safe harbor provided by the statutory forms or bear any other clear indication of an intent to waive, we cannot conclusively determine as a matter of law that a waiver was intended. And we reverse and remand on that basis.

¶35 There are genuine issues of fact as to Lane Myers's intent in executing the National City draw requests. As Lane Myers has indicated, the text of the draw requests failed to make direct reference to any existing lien right, and Lane Myers plausibly asserted that it did not intend to relinquish any such right. For example, Lane Myers provided parole evidence to "support the conclusion that the draw requests were nothing more than progress payments," alleged that the draw requests did not constitute a "final expression" of the bargain, and asserted that the draw requests were signed as a result of a mutual or unilateral mistake. These genuine disputes go to whether Lane

---

of the Mechanic's Lien Act. The latter employs an established term of art from the common law; the former states a vague standard of pleading that calls for a resort to forms to illustrate its content.

[5] Summary judgment is appropriate where it is clear from the document itself that it is a waiver or release. *See Zions First Nat'l Bank v. Saxton*, 493 P.2d 602, 603 (Utah 1972) (where the document on its face stated that "the payee upon endorsement hereby waives and releases all lien or right of lien," no genuine issues of fact precluded summary judgment); *Holbrook v. Webster's Inc.*, 320 P.2d 661, 663 (Utah 1958) (summary judgment appropriate where a document was "unambiguous[ly]" styled as a "Lien Release"). That is not the case here.

Myers intended to waive and release its lien rights when signing the draw requests. In light of genuine disputes on these issues, we reverse the entry of summary judgment and remand for further proceedings.

¶36 Unlike Justice Durham, we see nothing in the parties' arguments in the district court that forecloses a remand for further proceedings on the question of the parties' intent in executing the documents at issue. *See infra* ¶ 50 (noting that National City's and the Kykers' motions were based solely on the terms of the draw requests and "disclaimed any reliance on extrinsic evidence," and therefore concluding that "the legal question presented on appeal is whether the language of the draw request, in fact, waives Lane Myers'[s] lien rights"). It is true that both National City and the Kykers moved for summary judgment, and that both, in so moving, asserted a lack of ambiguity in the draw requests and a right to judgment in their favor as a matter of law. But we consider the propriety of summary judgment *de novo*, without any deference to the lower court. The question before us is accordingly whether there are any genuine issues as to material fact and whether the movant was entitled to judgment as a matter of law. *See* UTAH R. CIV. P. 56. A party's mere contention that there are no issues of material fact—a contention made *every time* a party moves for summary judgment—is beside the point. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725–26 (Utah 1990) (explaining that the "filing of cross-motions for summary judgment does not necessarily mean that material issues of fact do not exist" and holding that court may deny both motions, conclude that both sides are wrong and that a contract is ambiguous on its face and requires further proceedings)

¶37 Thus, in considering this question, we must make our own independent assessment of the parties' intentions as set forth on the face of the relevant documents. If we find the governing documents unambiguous we may determine that summary judgment should have been entered. But if we find ambiguity we may also determine that summary judgment was not called for, and that further proceedings are necessary. *See id.* at 725 ("[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." (alteration in original) (internal quotation marks omitted)). That is the basis of our decision here. Because we find ambiguity as to the parties' intentions on the face of the draw

requests, we hold that there are genuine issues of material fact foreclosing summary judgment. And we accordingly remand for further proceedings.

## III

¶38 We reverse and remand on grounds set forth above. In so doing, we also reject Lane Myers's request for attorney fees under Utah Code section 38-1-38, as Lane Myers has not (or at least not yet) prevailed in an action to enforce a lien. If and when either side prevails below, the question of an award of attorney fees may then be ripe for consideration, but it is not properly presented here.

---

CHIEF JUSTICE DURRANT, concurring in the result:

¶39 We are asked to determine what elements must be included in a document in order for it to qualify as a valid "waiver and release" under the Mechanic's Lien Act. In answering this question, the majority looks outside the Act to the common-law "term-of-art understanding of the elements of a 'waiver.'"[1] I would instead look to the Act itself, specifically to those elements the legislature has identified through examples set forth in the Act as meeting the requirements of a valid waiver and release.[2]

---

[1] *Supra* ¶ 3.

[2] This is the approach we recently took in *America West Bank Members, L.C. v. State* when, "for guidance," we turned to the model forms contained in the Utah Rules of Civil Procedure to interpret the "short and plain statement" requirement for breach of contract claims. 2014 UT 49, ¶ 17 (internal quotation marks omitted). And we took that approach despite the introductory statement in the model forms, which states that "[t]he following forms are intended for illustration only." UTAH R. CIV. P., Appendix of Forms, Introductory Statement. Here the case for using the forms as guidance is much stronger because there is no such qualifier and the forms are in the text of the statute itself. While it is true that our role in interpreting our own rules is somewhat different than our role in interpreting a statute, I think that in either case there is wisdom in using model forms "[a]s exemplars" to guide the court in understanding the scope of an otherwise unclear legal standard. *See Am. West Bank Members, L.C.,* 2014 UT 49, ¶ 17.

C.J. DURRANT, concurring

¶40 The majority rests its adoption of the term-of-art meaning of "waiver" on the ground that the legislature's definition of the term is circular: "In circularly conditioning the effectiveness of a 'waiver' on the execution of a 'waiver,' the legislature appears to have embraced a 'term of art with a widely shared meaning.'"[3] But the definition is circular only if it is assumed that the exclusive guidance provided by the legislature as to its intended meaning of "waiver and release" is found in subsection (2) of section 38-1-39. That is not the case, however. In fact, in subsection (4)(a) the legislature has set forth in some detail those elements that meet the requirements of section 38-1-39: "A waiver and release given by a lien claimant meets the requirements of this section if it is in substantially the form provided in this Subsection (4) for the circumstance provided in this Subsection (4)." The circumstances provided are a "waiver and release upon progress payment," a "waiver and release upon final payment," and a "restrictive endorsement placed on a check."

¶41 The majority concludes that the example set forth in subsection (4)(d) (restrictive endorsement on a check) is mandatory, but designates the examples set forth in subsections (4)(b) (conditional waiver and release upon progress payments) and 4(c) as mere safe harbors. I agree that the language in subsection (2) supports this distinction. But the fact that the 4(b) and (c) examples qualify as safe harbors should not make them altogether irrelevant to our analysis of what elements the legislature intended a waiver and release should include in order to qualify as valid in the unique context of the Mechanic's Lien Act. After all, the legislature did explicitly designate each of the three examples (or documents in substantially the same form) as a waiver and release that "meets the requirements of this section."[4]

¶42 I would not, as does the majority, effectively deem the 4(b) and (c) examples irrelevant and simply default to the garden variety definition of waiver. At minimum, it seems to me, these examples suggest that the legislature intended more in the unique mechanic's lien context. This is consistent with the

---

[3] *Supra* ¶ 30.

[4] UTAH CODE § 38-1-39(4)(a) (2010).

historical fact that a mechanic's lien could not be waived at all until the Act was amended in 2007.[5]

¶43 In justifying its decision to look outside the statute for the definition of "waiver and release," the majority relies on our recent decision in *Hughes General Contractors, Inc. v. Utah Labor Commission.*[6] In that case, we were called upon to interpret the term "employer," which was essentially defined as "one who engages employees."[7] And because the term "employee" was in turn defined as "any person suffered or permitted to work *by an employer,*"[8] we concluded that the statute was circular and looked to the "legal term-of-art understanding" of the term "employer."[9] But that approach was appropriate only because the statute provided no other indication of what the legislature meant by the term "employer."

¶44 This point is well illustrated by the United States Supreme Court opinion, *Nationwide Mutual Insurance Co. v. Darden,*[10] which we relied upon in *Hughes.* At issue in *Darden* was a circumstance almost identical to the one presented in *Hughes.* The Employee Retirement Income Security Act defined "employee" in a circular manner, and the Court was asked to interpret the term. As we did in *Hughes,* the *Darden* Court resorted to a definition that relied upon the common law.[11] But it did so only because "[the respondent] [did] not cite, and [the Court] [did] not find, any provision either giving specific guidance to the term's meaning or suggesting that construing it to incorporate traditional agency law principles would thwart the congressional design."[12]

---

[5] Before the amendment, a contractor's lien rights could not in any way be "varied by agreement." *Id.* § 38-1-29 (2006).

[6] 2014 UT 3, ¶¶ 12–15, 322 P.3d 712.

[7] *Id.* ¶ 13.

[8] *Id.* (internal quotation marks omitted).

[9] *Id.* ¶ 15.

[10] 503 U.S. 318, 323 (1992).

[11] *Id.*

[12] *Id.*

JUSTICE DURHAM, concurring

¶45 Here, we need look no further than subsection (4) to find specific guidance on the meaning of the terms "waiver and release." In my view, that the examples in subsections (4)(b) and (c) qualify as safe harbors does not give us license to wholly ignore them in assessing the legislature's intended meaning of the terms "waiver and release" as used in the Act. We should look to the full text of a statute for guidance as to the legislature's intended meaning before defaulting to a common-law term of art.

¶46 Accordingly, I believe an analysis of the legislature's intended definition of "waiver and release" in the unique context of the Mechanics' Lien Act should be guided by the detailed examples the Legislature has provided of documents that meet the requirements of the waiver section of the Act. I would therefore look to all of the section and, in a way similar to what the court of appeals did below, tailor a definition of "waiver and release" that gives deference to these examples.

¶47 Finally, whether we were to apply the common-law meaning of waiver as proposed by the majority or the meaning of waiver and release as I believe it to be augmented by the legislative examples, it is clear that there are factual issues that preclude summary judgment. Accordingly, I concur in the result.

---

JUSTICE DURHAM, concurring in the result:

¶48 I agree with the majority's interpretation of Utah Code section 38-1-39 (2010). I also agree that the district court erred when it granted summary judgment in favor of the Kykers and National City (collectively, National City). But I disagree with the majority's holding that a dispute of material fact precludes summary judgment. Instead, I would hold that the summary judgment motion at issue in this case squarely presented the legal question of whether the language of the draw request constituted a waiver of Lane Myers's statutory right to a mechanics' lien. In my view, the draw request does not waive Lane Myers's right to file a lien, and I would reverse the district court's order granting summary judgment on this legal ground.

## I. WAIVER IS A QUESTION OF LAW IN THIS CASE

¶49 Depending on the arguments made by the party asserting the doctrine, waiver may be either a question of law or a mixed question of law and fact. If a party asserts that a known right has been implicitly waived through a course of conduct, waiver is a

fact-intensive mixed question. *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds*, 2006 UT 35, ¶¶ 21, 25, 140 P.3d 1200; *Chen v. Stewart*, 2004 UT 82, ¶¶ 20, 23, 100 P.3d 1177. However, if a waiver claim is based upon a writing, and no extrinsic evidence of the meaning of ambiguous terms is presented, waiver is a question of law that may be resolved on summary judgment. *See Zions First Nat'l Bank v. Saxton*, 493 P.2d 602, 603 (Utah 1972); *Holbrook v. Webster's Inc.*, 320 P.2d 661, 663 (Utah 1958); *see also Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985) (absent extrinsic evidence, the interpretation of a contract is a question of law).

¶50 Although it may be theoretically possible for a party to assert that both a written document and a course of conduct contributed to the waiver of a right, that is not the case here. National City's motion for summary judgment was based solely upon its assertion that the language in the draw request waived Lane Myer's's right to a lien. National City also disclaimed any reliance on extrinsic evidence, and argued that Lane Myers's waiver was "clear from the terms contained within [the draw request's] four corners." Consistent with this argument, the district court ruled that the draw request constituted a waiver. Because National City understandably chose to assert a purely legal ground for summary judgment, and because the district court granted summary judgment based upon its interpretation of the draw request, the legal question presented on appeal is whether the language of the draw request, in fact, waives Lane Myers's lien rights.

¶51 Indeed, in the context of mechanics' liens, all waivers of lien rights must be written. The mechanics' lien statutes in effect at the time Lane Myers signed the last draw request stated: "The applicability of the provisions of this chapter, including the waiver ~~for~~ of rights or privileges granted under this chapter, may not be varied by agreement." UTAH CODE § 38-1-29 (2007).[1] In other words, the specific waiver provision of the mechanics' lien statute provided the exclusive means of waiving lien rights, and the parties could not agree to modify these requirements. This waiver provision stated that "[n]otwithstanding Section 38-1-29, a *written* consent given by a lien claimant that waives or limits the lien claimant's lien rights is enforceable." UTAH CODE § 38-1-

---

[1] The current version of this statute may be found at Utah Code section 38-1a-105.

JUSTICE DURHAM, concurring

39(2) (2007) (emphasis added).[2] By statute, therefore, it was not possible to waive the right to a mechanics' lien through conduct or verbal statements — only a written waiver would suffice.

¶52 Therefore, I disagree with the majority's conclusion that the issue of waiver may not be disposed of as a matter of law. *Supra* ¶ 29. Although a claim of implicit waiver through a course of conduct, as well as the use of extrinsic evidence to determine the meaning of a written document, involve fact-intensive inquiries that may very well lead to disputes of material fact precluding summary judgment, these types of claims are not relevant here. The dispositive issue in this case is whether the language of the draw request constitutes a valid written waiver of Lane Myers's lien rights as required by statute. Because this is a purely legal question, this court should resolve it.

## II. THE DRAW REQUEST LANGUAGE DOES NOT WAIVE LANE MYERS'S LIEN RIGHTS

¶53 The draw request National City required Lane Myers to sign before the final disbursement of funds contained a declaration that "no liens or claims that may result in liens exist against the above-described property" at issue in this appeal. This is not a waiver of Lane Myers's lien rights. Unlike language we have previously held adequate to waive mechanics' lien rights,[3] the draw request does not proclaim Lane Myers's statutory right to file a mechanics' lien had been waived or

---

[2] This waiver statute has been renumbered as Utah Code section 38-1a-802.

[3] *See Zions First Nat'l Bank v. Saxton*, 493 P.2d 602, 603 (Utah 1972) ("the payee upon endorsement hereby waives and releases all lien [sic] or right of lien now existing or that may hereafter arise for work or labor performed or materials furnished" (internal quotation marks omitted)); *Brimwood Homes, Inc. v. Knudsen Builders Supply Co.*, 385 P.2d 982, 983 (Utah 1963) ("the undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has or may hereafter acquire against said real property" (internal quotation marks omitted)); *Holbrook v. Webster's Inc.*, 320 P.2d 661, 663 (Utah 1958) (same); *see also Neiderhauser Builders & Dev. Corp. v. Campbell*, 824 P.2d 1193, 1194 (Utah Ct. App. 1992) ("the payee . . . waives[,] releases and relinquishes all right of lein [sic] or claims payee now has to date upon the premises" (second and third alterations in original) (internal quotation marks omitted)).

relinquished. Instead, this language makes an assertion of fact: that Lane Myers had no liens or claims that could result in liens against the property when the draw request was signed. Regardless of whether this declaration of fact is deemed true or false, it does not purport to waive Lane Myers's lien rights.

¶54 Therefore, I agree with the majority's conclusion that the draw request is insufficient to establish an enforceable waiver. *Supra* ¶ 33. But I would reverse summary judgment on this legal ground as it was the only theory of waiver presented to the district court—and, indeed, the only theory permitted in the context of mechanics' liens.

---

ASSOCIATE CHIEF JUSTICE NEHRING, concurring in the result:

¶55 I concur in the result reached by all of my colleagues: summary judgment must be reversed. However, I agree with Chief Justice Durrant's reasoning concerning the relevance of the forms contained in Utah Code section 38-1-39(4). Like the Chief Justice, I would not "effectively deem the 4(b) and (c) examples irrelevant and simply default to the garden variety definition of waiver."[1] Thus, I concur with the Chief Justice's reasoning. However, like Justice Durham, I believe that there is no need for further development of the facts concerning the existence of a valid waiver. I agree with Justice Durham that the grant of summary judgment on behalf of the Kykers should be reversed and the summary judgment motion denied on the basis that the draw request does not establish an enforceable waiver.

---

[1] *Supra* ¶ 42.